The **INTERNATIONAL CAUCUS OF LABOR COMMITTEES; Richard Boone, Reverend, individually and as a member of International Caucus of Labor Committees; Gary D. Kanitz, individually and as a member of International Caucus of Labor Committees; Gerald E. Berg, individually and as a member of International Caucus of Labor Committees, Plaintiffs,**

v.

The **CITY OF MONTGOMERY; The City of Montgomery Police Department; John Wilson, in his official capacity as Chief of Police of the City of Montgomery, Defendants.**

**Civ. A. No. 93–H–519–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 7, 1994.

James Edward Wilson, Jr., Montgomery AL, for plaintiff.

Thomas, Means & Gillis, Mark Englehart and Kenneth L. Thomas, and Thomas C. Tankersley, City of Montgomery Legal Dept. Montgomery, AL, for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiffs, the International Caucus of Labor Committees (ICLC) and three of its individual members (Richard Boone, Gary D. Kanitz, and Gerald E. Berg), instituted this action against the City of Montgomery, the Montgomery Police Department, and Chief John Wilson alleging that the City's recently enacted policy prohibiting the placement of tables on City sidewalks violated the First Amendment's command that governmental bodies "shall make no law ... abridging the freedom of speech, or of the press." U.S. CONST. amend. I. Under the auspices of the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, plaintiffs have prayed for a declaratory judgment, 28 U.S.C. §§ 2201 & 2202, and injunctive relief regarding the actions of defendants in denying plaintiffs the right to distribute political literature from tables placed on public sidewalks.[1] Jurisdiction over this action, which was tried without a jury on May 11, 1994, is predicated upon 28 U.S.C. § 1331. Based on the following findings of fact and conclusions of law, the court is of the opinion that the City's policy fails to comport with fundamental First Amendment principles and that plaintiffs are entitled to a declaratory judgment in their favor.

## I. FINDINGS OF FACT

ICLC is an organization devoted to altering the contemporary political landscape. ICLC distributes literature and recruits new members in several ways; one of its preferred ways is to place tables in common, public areas in an effort to attract people to take its literature from these tables. Plaintiffs use the distribution of literature to solicit membership as well as to attempt to persuade people to accept its political views. The tables upon which plaintiffs routinely display several stacks of assorted books, pamphlets, and newspapers enhance plaintiffs' ability to disseminate literature in a meaningful fashion, and consequently, plaintiffs view the use of tables as a necessary part of their day to day street activities.

This case arises out of plaintiffs' use of a table on two occasions on public sidewalks owned by the City of Montgomery. On both occasions, post office personnel called the Montgomery Police Department (MPD) to complain about plaintiffs' distributing literature in front of the post office. On both occasions the MPD responded to the call and directed plaintiffs to move without indicating that the table either caused or aggravated the concern over plaintiffs' presence. On both occasions plaintiffs were located not on postal property but on City property, and on both occasions plaintiffs were distributing literature from a card table that contained several stacks of books and literature.

Plaintiffs' initial encounter with police occurred during the first week of June 1992, at the West Side Station Post Office. At that time plaintiff Kanitz was selling and handing out literature, soliciting contributions and memberships, endorsing candidates running for local, state and national office, voicing support for ICLC's candidate for President of the United States, and generally promoting the political platform and worldview of ICLC. The masthead of the newspaper Kanitz was selling prominently displays this

---

**1.** The Code of the City of Montgomery defines sidewalk as follows: "That portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for use of pedestrians." § 25–1 (1980). The parties agree that the City's ban on placing tables on sidewalks applies to tables placed on the grassy area between the street curb and the concrete walkway. The term "concrete walkway," a subset of the term "sidewalk," refers to the paved region of the sidewalk upon which pedestrians generally travel. The court uses the term in part to disclose the broad sweep of the City's ban.

statement of *Ben Franklin* made in 1772: "Whoever would overthrow the liberty of a nation must begin by subduing the freeness of speech [ ...]."

Kanitz commenced distributing his materials shortly after nine in the morning and continued until approximately one in the afternoon. During this time Kanitz stood beside the table while attempting to converse with passersby and witnessed an average of three to four patrons enter the post office each hour. The table was placed roughly thirty feet from the post office building. At all times, the table was located on the grassy region between the curb and the concrete walkway. No part of the table touched the concrete walkway.

The table's dimensions are three feet by three feet; the grassy region outside the West Side Station is roughly four and one half feet wide; the concrete walkways are five feet wide. Plaintiff witnessed no more than four patrons per hour enter the post office. At no time did the table obstruct any person's use of the sidewalk.

Mr. Dorsey, the relief supervisor at the West Side Station, testified that he received more than one complaint about plaintiffs' presence at the post office; there was no evidence, however, that such complaints related to the table. From the evidence it appeared that the objection was to persons attending the display tables and approaching pedestrians in an effort to interest them in available literature. Dorsey, acting under the mistaken belief that plaintiffs were on federal property, informed plaintiffs they would have to move. Dorsey called the police, who upon arrival, informed plaintiffs that they would be arrested if they did not move.

Within the next two days, plaintiffs set up their table at the Carolyn Station Post Office at approximately 10 a.m. Although most of the table occupied space only on the six-foot-wide grassy area, two of the table's four legs were placed on the concrete walkway such that the table occupied a few inches of the four-foot, three-inch wide concrete walkway. During the time plaintiffs' were at the Carolyn Station, two or three people used the walkway and talked with plaintiffs; an additional person walked by the table without speaking to plaintiffs. The post office received no complaints regarding plaintiffs or their table. Defendants adduced no evidence of actual obstruction or interference with pedestrian traffic. Shortly after plaintiffs set up their table, however, the police arrived and directed plaintiffs to leave or submit to arrest.

On June 10, 1992, a representative of ICLC wrote to the Mayor of Montgomery regarding plaintiffs' desire to promote their views "by setting up literature tables at public sites." The letter stated that ICLC does "not block public access and do[es] not look for physical confrontations." The letter indicated that plaintiffs would adhere to a reasonable procedure regulating the use of tables within the City and that plaintiffs were amenable to notifying Police Chief Wilson in advance of the sites upon which plaintiffs intended to place the tables. The City responded on June 16, 1992, with a letter imposing a total ban on plaintiffs' practice of placing tables on City sidewalks. That letter states, in pertinent part:

> Your actions do not violate the laws of this city unless you impede the orderly flow of traffic in the streets and at the street corners.
>
> Your organization will not be allowed to set up tables or booths on the sidewalks of this city. These tables or booths would create a partial blockage of pedestrian traffic and therefore will not be allowed on the sidewalks. Your organization may set up tables or booths on private property where you have the permission of the property owner.

No reference was made to the City ordinance prohibiting the obstruction of sidewalks, although such ordinance presumably furnished the authority to issue the ban.[2] Kanitz testi-

---

**2.** Section 25–92 of the Montgomery City Code provides in part:

"(a) No person, firm, corporation, or public utility, with the exception of railroad trains as is provided in section 25–91 above, shall block or partially block, for whatever purpose, any public street, highway or sidewalk within the city without reasonable notice to and prior approval of

fied that after imposition of the complete ban, ICLC decided to curtail drastically its efforts in Montgomery until the question regarding tables could be resolved.

## II. CONCLUSIONS OF LAW

To evaluate the constitutionality of the City's ban, the court must first determine whether the placement of tables on city sidewalks is subject to First Amendment scrutiny at all. If the First Amendment is found to apply, then the court must determine whether the prohibition is content-neutral or content-based. This determination will enable the court to scrutinize the present dispute under the appropriate constitutional standard.

■ The defendants can hardly dispute that sidewalks constitute a classic setting for the robust exercise of First Amendment rights and thus enjoy the status of a traditional public forum. *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988); *Carey v. Brown*, 447 U.S. 455, 460–61, 100 S.Ct. 2286, 2289–91, 65 L.Ed.2d 263 (1980). The Supreme Court has stated that "public streets and sidewalks ... 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988) (*quoting Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939) (Roberts, J.)). An unbroken line of Supreme Court cases conclusively establishes that "streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot be constitutionally denied broadly and absolutely." *Amalgamated Food Employees Union 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 315, 88 S.Ct. 1601, 1606–07, 20 L.Ed.2d 603 (1968), *overruled on other grounds, Hudgens v. NLRB*, 424 U.S. 507, 517–19, 96 S.Ct. 1029, 1035–36, 47 L.Ed.2d 196 (1976); *see also United States v. Grace*, 461 U.S. 171, 179–80, 103 S.Ct. 1702, 1708–09, 75 L.Ed.2d 736 (1983) (public sidewalks surrounding Supreme Court building are public forums no less than other public sidewalks); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969) (public streets and sidewalks are public forums). This precedential phalanx secures the full panoply of First Amendment rights to communicative conduct occurring on public sidewalks.

■ The Supreme Court established in *Lovell v. City of Griffin*, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938), that the distribution as well as the publication of literature is entitled to First Amendment protection. *See also Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1878) (stating that the liberty to circulate conferred meaning upon the liberty to publish). Even distribution accomplished by the placement of permanent or semi-permanent structures on public property remains subject to First Amendment scrutiny. *City of Cincinnati v. Discovery Network, Inc.*, —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (invalidating city's ban on commercial newsracks); *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 769, 108 S.Ct. 2138, 2150–51, 100 L.Ed.2d 771 (1988) (licensing of newsrack placement subject to First Amendment challenge); *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1196–97 (11th Cir.1991) (collecting cases that demonstrate the right to distribute and circulate newspapers through the use of newsracks is well-settled); *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 673 (11th Cir.1984) (newsracks enjoy First Amendment protection); *see also Graff v. City of Chicago*, 9 F.3d 1309, 1328 (7th Cir. 1993) (en banc) (Flaum, J., concurring) (newsstands, as "instrument[s] for the dissemination of expressive materials," implicate First Amendment values), *cert. denied*, —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994).[3]

---

the department of police and the traffic engineer."

The parties have not requested the court to review the validity of this ordinance.

.

**3.** The City relies upon two cases, neither of which can be reconciled with longstanding First Amendment principles, to support the proposition that the use of tables for purposes of distributing political literature implicates no First

The City's attempt to show that the use of tables was not necessary to the distribution of plaintiffs' literature is as irrelevant here as it would be in the context of newsrack placement. No one contends that the newsrack is a necessary prerequisite to newspaper distribution. Rather, the newsrack, like the table, facilitates the "freedom to speak, write, print or distribute information or opinion." *Schneider v. State,* 308 U.S. 147, 160–61, 60 S.Ct. 146, 150–51, 84 L.Ed. 155 (1939). Unsurprisingly, the Supreme Court has repeatedly subjected regulations restricting the use of devices that aid in the communication of ideas to the rigors of First Amendment review. *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (loudspeakers and amplifying devices, although not necessary to effectuating speech itself, implicate First Amendment concerns); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (sound trucks); *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (amplification equipment); *see also Jamison v. Texas,* 318 U.S. 413, 416, 63 S.Ct. 669, 671–72, 87 L.Ed. 869 (1943), *and Schneider v. State,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) (distribution of handbills protected although human speech alone capable of disseminating political messages). The City's contention that its ban on the use of tables to distribute literature warrants no consideration under First Amendment analysis is therefore without merit.[4]

Nonetheless, "to say the ordinance presents a First Amendment *issue* is not necessarily to say that it constitutes a First Amendment *violation.*" *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 561, 101 S.Ct. 2882, 2920, 69 L.Ed.2d 800 (1981) (Burger, C.J., dissenting) (emphasis in original). Having determined that the placement of tables for the purpose of distributing literature on sidewalks is subject to First Amendment scrutiny, the court must determine whether the ban on tables satisfies the time, place, or manner test set out in *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989). *Ward* provides that the City may restrict speech in a public forum, so long as the restriction is (1) content and viewpoint neutral, (2) narrowly tailored to serve a significant governmental interest, and (3) leaves open ample alternative channels of communication. *Id.*

On its face, and as applied, the City's ban on tables is content-neutral. Chief Mallory testified that the ban applied to any table erected by any organization, regardless of purpose or message. In light of such assurance that no organization is exempt from the ban, the court finds that the ban does not regulate tables on the basis of content or viewpoint.[5]

The fact that the ban is content-neutral establishes compliance with the first prong of the *Ward* test. The second prong is whether the ban is narrowly tailored to serve a significant governmental interest. The court is reluctant to conclude that the governmental interests asserted here qualify as significant ones. In the abstract, the City's interests are certainly significant. "[A] State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." *Heffron*

---

Amendment interest. *See Int'l Caucus of Labor Committees v. Metropolitan Dade County,* 724 F.Supp. 917, 921 (S.D.Fla.1989) (inexplicably finding that political display tables, unlike newsracks, were not entitled to First Amendment protection) *and Int'l Soc. for Krishna Consciousness, Inc. v. Rochford,* 585 F.2d 263, 270 (7th Cir. 1978) (dicta) (cursorily claiming that table prohibition did not "restrict the exercise of guaranteed rights").

4. Indeed, two cases from the State of New York have assumed that the use of tables to distribute literature falls squarely within the ambit of the First Amendment and have found unconstitutional a city's attempt to prohibit the placement of

tables on its sidewalks. *Gannett Co. v. City of Rochester,* 69 Misc.2d 619, 330 N.Y.S.2d 648 (1972); *People v. Krebs,* 54 Misc.2d 578, 282 N.Y.S.2d 996 (1967) (addressing prohibition upon New York City sidewalks).

5. In fact, one of the City's arguments for prohibiting tables on sidewalks was that the inherent inflexibility of an absolute ban would insulate the City from the charge of content discrimination. This concern is understandable, but as explained in detail *infra,* First Amendment freedoms are too vital to a free society to yield to even sensible strategies of litigation avoidance. *See Edwards v. Maryland State Fair and Agr. Soc.,* 628 F.2d 282, 287 (4th Cir.1980).

v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 650, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). But the City has failed to demonstrate in concrete terms any need for this sweeping regulation or for its application to the incidents at issue. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 805–07, 104 S.Ct. 2118, 2128–30, 80 L.Ed.2d 772 (1984) (government's asserted interest must be "sufficiently substantial" to justify its use); *Multimedia Pub. Co. v. Greenville–Spartanburg Airport District,* 991 F.2d 154, 161–62 (4th Cir.1993) (record revealed government's asserted interests to be illusory, tenuous, and non-verified). Unlike *Heffron,* where the Court determined that it was permissible to confine the solicitation efforts of the Krishnas to a particular booth at the fairgrounds based on the increased activity and congestion associated with state fairs, the City of Montgomery's ban is here being applied where there is not even a claim that traffic density creates a problem justifying a ban.

■ The City also suggested at trial that plaintiffs harassed and annoyed passersby. In fact, plaintiff Berg testified that when he uses a table he is less likely to wander about a public forum than he is when he distributes literature by hand alone. Contrary to the City's conjecture, then, plaintiffs may pose a lower potential for "harassment" when their distribution efforts are concentrated upon the location of the table. Of course the City presented no evidence that harassment had occurred, and even if it had, such a showing would not demonstrate that persons distributing literature beside a table are any more disruptive than persons distributing literature without a table. Persons who created a substantial safety hazard or unduly disrupted pedestrian movement could be regulated regardless of whether they had a table with them at the time. *See, e.g., Schneider v. State,* 308 U.S. 147, 160–61, 60 S.Ct. 146, 150–51, 84 L.Ed. 155 (1939); *People v. Krebs,* 54 Misc.2d 578, 282 N.Y.S.2d 996, 1000 (1967)

(constitutionally permissible to prohibit the use of tables only when they "so substantially impede or delay the convenient and safe passage of pedestrian traffic as to curtail seriously ... the use thereof by others"). Likewise, the presence of a table does nothing to diminish the right to distribute literature that pedestrians find annoying. *See, e.g., Cohen v. California,* 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786–87, 29 L.Ed.2d 284 (1971) (annoying and even profane expression is protected by First Amendment). The court, therefore, finds it inappropriate to conclude on this record that the City's interests are significant ones.

■ Even if the City's interests are viewed as significant, the ban on tables is not narrowly tailored to serve those interests. A content-neutral regulation qualifies as a narrowly tailored regulation if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989). Moreover, "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.*

■ The Supreme Court has further refined the narrow tailoring inquiry when it is applied to a regulation which operates as a complete ban on a certain form of expressive activity, as is the case here. A complete ban will be upheld "only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 2502–03, 101 L.Ed.2d 420 (1988). The substantive evil to be regulated (*e.g.* pedestrian obstruction) must be more than a "possible byproduct of the activity;" rather, the evil must be "created by the medium of expression itself." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 810, 104 S.Ct. 2118, 2131, 80 L.Ed.2d 772 (1984).[6]

---

**6.** The Court employed identical reasoning to uphold a complete ban on residential picketing, finding that the ban targeted and eliminated "no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 2502–03, 101 L.Ed.2d 420 (1988). The Court found that the "evil of targeted residential picketing, the very presence of an unwelcome visitor at the home, is created by the medium of expression itself." *Id.* at 487, 108 S.Ct. at 2504. Thus, the ban was compatible with constitutional commands.

In the present case, the City's ban violates constitutional commands because it "suppress[es] a great quantity of speech that does not cause the evils it seeks to eliminate." *Ward,* 491 U.S. at 799 n. 7, 109 S.Ct. at 2758 n. 7. Even as to the specific table used by plaintiffs, the City showed only that complaints were received at the West Side Station. The City could not confirm that these complaints related to any physical obstruction on the sidewalk, or that they stemmed from a hazard created by the display table.[7] Indeed, no more than fifteen people used the sidewalks on either occasion in question. Likewise, the City's contention that the potential for pedestrian obstruction existed at the Carolyn Station was totally unsubstantiated.

The City's interests in promoting its ban remain equally attenuated as applied to other sidewalks within the City, especially since pedestrian flow on a particular sidewalk is a function of the nature and location of that sidewalk. Chief Mallory testified that the sidewalks on Dexter Avenue are no less than fifteen feet wide in some places. It was also readily admitted that stationary newsracks appear, sometimes in series, even on sidewalks of moderate width. The City produced no evidence that these structures constitute a source of pedestrian obstruction. Stationary physical structures, then, by their nature, do not at all times and all places cause undue impediments or hazards to pedestrians. The total ban on tables is therefore distinguishable from other bans that the Court has upheld.

In *Taxpayers for Vincent* and in *Frisby,* total bans were upheld only because the medium of expression at issue, by its very nature, generated an evil the government sought to regulate. By contrast, when the evil to be regulated can be disentangled from the medium of expression, or when it is not certain that the evil will emanate from the medium, the Court has insisted that the government rely upon a regulatory device less devastating than a total ban to protect its significant interests. *See, e.g., United States v. Grace,* 461 U.S. 171, 181, 183–84, 103 S.Ct. 1702, 1709, 1710–11, 75 L.Ed.2d 736 (1983) (invalidating absolute ban on picketing and leafletting on public sidewalks surrounding Supreme Court building, but condoning the imposition of reasonable time, place, and manner restrictions); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 158, 89 S.Ct. 935, 942–43, 22 L.Ed.2d 162 (1969) (finding an outright prohibition on public marches constitutionally infirm, but noting that time, place, and manner of marches could be regulated); *Schneider v. State,* 308 U.S. 147, 162–65, 60 S.Ct. 146, 151–52, 84 L.Ed. 155 (1939) (invalidating complete bans on handbill distribution and on unlicensed door-to-door communication, but indicating that imposing penalties on those who littered raised no constitutional problem); *Martin v. Struthers,* 319 U.S. 141, 145–49, 63 S.Ct. 862, 864–66, 87 L.Ed. 1313 (1943) (invalidating complete ban on door-to-door solicitation, while noting that laws against fraud and trespass did not raise constitutional concerns); *Jamison v. Texas,* 318 U.S. 413, 415–16, 63 S.Ct. 669, 671–72, 87 L.Ed. 869 (1943) (invalidating complete ban on handbill distribution in public streets and rejecting city's contention that it possessed the power "absolutely to prohibit the use of the streets for the communication of ideas"); *Amalgamated Food Employees Union 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 316, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968) ("That the manner in which handbilling, or picketing, is carried out may be regulated does not mean that either can be barred under all circumstances...."), *overruled on other grounds, Hudgens v. NLRB,* 424 U.S. 507, 517–19, 96 S.Ct. 1029, 1035–36, 47 L.Ed.2d 196 (1976); *Lovell v. City of Griffin,* 303 U.S. 444, 451–52, 58 S.Ct. 666, 324–25, 82 L.Ed. 949 (1938) (invalidating ordinance that completely banned unlicensed pamphlet distribution within city limits); *Schad v. Mount Ephraim,* 452 U.S. 61, 75–76, 101 S.Ct. 2176, 2186–87, 68 L.Ed.2d 671 (1981) (invalidating complete ban on live entertainment); *Kovacs*

---

7. The City has the burden of proving that its intrusions upon protected First Amendment activity are narrowly tailored to serve a significant governmental interest. *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469,

480, 109 S.Ct. 3028, 3034–35, 106 L.Ed.2d 388 (1989); *Zauderer v. Office of Disciplinary Counsel of Supreme Court,* 471 U.S. 626, 647, 105 S.Ct. 2265, 2279–80, 85 L.Ed.2d 652 (1985).

*v. Cooper,* 336 U.S. 77, 81–82, 69 S.Ct. 448, 450–51, 93 L.Ed. 513 (1949) (plurality opinion of Reed, J.); ("Absolute prohibition within municipal limits of all sound amplification" would likely be unconstitutional).[8] Most recently, the High Court reiterated that complete bans are constitutionally disfavored, admonishing that "such measures can suppress too much speech." *City of LaDue v. Gilleo,* — U.S. —, —, 114 S.Ct. 2038, 2039, 129 L.Ed.2d 36 (U.S.1994) (invalidating ordinance that completely banned noncommercial signs conveying political, religious, or personal messages in residential areas).

In this case the City suppresses too much speech because the harm the City attempts to address is a hypothetical byproduct, rather than a necessary component, of plaintiffs' activity. Plaintiffs did not interfere with pedestrian movement, pedestrian flow was not inhibited by the presence of the plaintiffs' display table, and traffic on the streets and in the parking lots went unimpeded. Despite such evidence, the City would have the court assume that non-permanent display tables, by their nature, wherever or whenever they are located on public sidewalks, however they are constructed, regardless of their size or purpose, whether they intrude two inches or not at all on the paved sidewalk, constitute an impediment to the safety and convenience of pedestrians. The court can not indulge assumptions that the record—to say nothing of common sense—reveals to be invalid.

■ The final prong of the time, place, or manner test requires the court to consider whether the ban leaves ample alternative means of communication open. Although nothing in the ban prevents plaintiffs from distributing literature and papers in front of public buildings and in the streets themselves, Kanitz testified that the use of tables was a necessary part of day to day street work and that ICLC had decided to curtail drastically its efforts in Montgomery until the table issue was resolved. In light of the court's determination that the ban fails to satisfy the Constitution's narrow tailoring requirement, the court need not determine whether the use of display tables to distribute literature is a "uniquely valuable or important mode of communication, or [whether plaintiffs'] ability to communicate effectively is threatened by ever-increasing restrictions on expression." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 812 & n. 30, 104 S.Ct. 2118, 2133 & n. 30, 80 L.Ed.2d 772 (1984).

■ It is nonetheless appropriate to note that the advocacy of underfunded contrarian causes is entitled to nothing less than first class First Amendment protection. In our technologically centered society, where free speech is frequently expensive and seldom free, courts should not ignore that access to the most powerful and persuasive media of communication—such as radio, television, and the press—is foreclosed to a sizeable portion of the public who may wish to engage in the political process but lack the financial resources to do so. Courts must not only

---

**8.** Despite stating that all sound amplifiers could not be prohibited, *Kovacs* did uphold a ban on soundtrucks emitting "loud and raucous" noises. The distinction between generic sound amplifiers and "loud and raucous" sound trucks parallels the critical distinction between this case and *Graff v. City of Chicago,* 9 F.3d 1309 (7th Cir. 1993) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994), a case upon which the City attaches inordinate importance. In *Graff,* the Seventh Circuit determined that there exists no constitutional right to erect a newsstand on a public sidewalk. But a newsstand is not a table, nor, as the *Graff* court recognized, is it a newsrack. Newsstands are large, quasi-permanent, immobile structures. *Id.* at 1315. These inherent features insure that newsstands will inevitably impede pedestrian flow. *Kovacs* lends support to the Seventh Circuit's conclusion that the construction of such structures on sidewalks may be forbidden. However, *Kovacs* teaches, as do *Frisby* and *Taxpayers for Vincent,* that the placement of smaller structures on public sidewalks, which do not inevitably cause pedestrian impediments, may not be totally banned. Such lessons did not escape the *Graff* court, which assumed that a city could prohibit the construction of a newsstand just as it could prohibit the construction of an office building, even if the same was not true with respect to a newsrack. *Graff,* 9 F.3d at 1315 & n. 4. The court stated that "a newsstand is more closely related to a building than it is to a newsrack." *Id.* at n. 4. Because display tables are more closely related to newsracks than are newsstands (to which display tables are not even distantly related), *Graff* fails to advance, and may in fact vitiate, the City's contention that a complete ban on tables is constitutionally permitted.

guard against measures that curtail the freedom of newspapers, magazines, or television or radio broadcasts, but courts must also zealously ensure that criticism of government or exhortation for change are not suppressed simply because such criticism or exhortation comes from those who are forced to rely upon more modest means of communicating.

■ The City of Montgomery permits the placement of newsracks on its sidewalks. Newspaper publishers certainly possess far greater resources to circulate their papers than do plaintiffs. Just as the court believes that the First Amendment protects the placement of newsracks on public sidewalks so long as they do not substantially obstruct pedestrian flow or demonstrably engender visual blight, so the court believes the First Amendment protects plaintiffs in working from a table to communicate their message, subject to the constraint that the table does not significantly obstruct pedestrian movement on the sidewalk.

## CONCLUSION

The court is not unmindful that invalidating the City's total ban may increase administrative burdens placed on those charged with the duty of providing unobstructed public sidewalks. But this invalidation does not leave the City without more narrow means of regulating tables or other obstructions that impede pedestrian flow. More importantly, the First Amendment enshrines the value of free speech without expressing any discernible regard for its adverse effect on regulatory efficiency; consequently, the Constitution forbids the City to sacrifice plaintiffs' free speech rights upon the alter of easy and efficacious enforcement. Because the City's ban excessively and unnecessarily infringes on plaintiffs' rights guaranteed by the First Amendment, plaintiffs are entitled to the declaratory relief they seek.[9]

An appropriate judgment will be entered in accordance with this memorandum opinion.

9. Although plaintiffs have sought an injunction to restrain defendants permanently from enforcing the ban on the placement of tables on the City's sidewalks, the court is confident that defendants

*JUDGMENT*

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiffs and against defendants;

(2) That the City of Montgomery's complete ban upon the placement of tables on City sidewalks at all times and places is hereby DECLARED unconstitutional;

(3) That the plaintiffs are entitled to an award of attorney's fees and are DIRECTED to file a request for attorney's fees under the procedures set forth in Local Rule 20 only if the parties are unable to reach an agreement as to the proper amount of the fees; and

(4) That all other relief sought by plaintiffs that is not specifically granted be and the same is hereby DENIED.

It is further ORDERED that all costs of this proceeding be and they are hereby taxed against defendants, for which execution may issue.

will abide by today's declaration that the ban is unconstitutional. The court therefore deems it unnecessary to enter the requested injunction.