**ONE WORLD ONE FAMILY NOW, INC.; Earth Friends, Inc.; Earth Children, Inc.; Bhaktivendanta Mission Ltd.; International Missing Children Bulletin, Inc., Plaintiffs,**

v.

**STATE OF NEVADA, Nevada Department of Transportation, Kent Mayer, P.E., Defendants.**

No. CV–S–94–684–PMP (LRL).

United States District Court,
D. Nevada.

Aug. 23, 1994.

---

1458

Robert J. Kossack, Kossack Law Office, Las Vegas, NV, Joseph Fedorowski, Oxford Law Firm, Inglewood, CA, for plaintiffs.

Samuel Coon, Sr. Deputy Atty. Gen., Office of Atty. Gen., Las Vegas, NV, for defendants.

*ORDER*

PRO, District Judge.

### I. *PROCEDURAL HISTORY*

On August 4, 1994, Plaintiffs filed their Complaint (# 1) along with a Motion for Temporary Restraining Order/Preliminary Injunction (# 2). Pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, Plaintiffs seek a declaratory judgement and injunctive relief with regard to Defendants State of Nevada's, Nevada Department of Transportation's, and Kent May-

er's (hereinafter collectively referred to as "the State") efforts to prohibit Plaintiffs from placing tables, chairs, umbrellas, boxes and signs on the public sidewalks adjacent to Las Vegas Boulevard South between Russell Road and Sahara Avenue in Clark County, Nevada (hereinafter "the Strip"). On August 4, 1994, the Court granted Plaintiffs' Motion for Temporary Restraining Order (# 4) and set this matter for hearing on Plaintiffs' Motion for a Preliminary Injunction (# 2). The State filed an Opposition (# 5) to Plaintiffs' Motion, and various Exhibits (## 6, 8 & 9) in support thereof, on August 9 and 10, 1994. The Court heard oral argument on August 11, 1994, at which time Plaintiffs filed Supplemental Exhibits (# 10). On August 12, 1994, the parties filed Supplemental Points and Authorities (## 12 & 14) regarding Plaintiffs' Motion for Preliminary Injunction.

## II.  *FACTUAL BACKGROUND*

Plaintiff One World One Family Now, Inc. ("One World") is allegedly a charitable nonprofit organization whose mission is "to promote spiritual values, including spiritual ecology or caring for God's creation and his creatures, to promote the worship of God in all his form and to educate the public about the importance of those values." Plaintiffs' Complaint (# 1), at 2. The remaining Plaintiffs are each charitable nonprofit organizations, allegedly with similar missions.[1] Plaintiffs wish to set up tables, chairs, umbrellas, boxes and signs on the public sidewalks adjacent to the Strip, from which they can engage in the sale of T-shirts containing political, religious, philosophical or ideological messages relating to, and in furtherance of, their respective missions. *Id.* at 6. These locations are particularly desirable to Plaintiffs as the sidewalks are in front of several

large hotel/casinos which are located on the Strip and which therefore carry heavy pedestrian traffic.

On July 28, 1994, Plaintiffs received notice from Kent Mayer ("Mayer"), Assistant District Engineer of the Nevada Department of Transportation, informing them that, pursuant to the provisions of Nev.Rev.Stat. ("NRS") § 408.210, Plaintiffs must remove their tables, chairs, umbrellas, boxes and signs from the State highway right-of-way easement, which includes the sidewalks along the Strip. *Id.* at 7. The Notice also informed Plaintiffs that if they failed to remove these encroachments within five days, the State would do it for them and impose a fine of $100.00 per day for each day said encroachment remained. *Id.*

NRS § 408.210 establishes the powers of the director of the Nevada Department of Transportation with regard to the closing and construction of highways[2] and removal of any encroachments[3] thereon. Specifically, the statute provides, in relevant part:

> The director may remove from the highways any unlicensed encroachment which is not removed, or the removal of which is not commenced and thereafter diligently prosecuted, within 5 days after personal service of notice and demand upon the owner of the encroachment or his agent.

NRS § 408.210.3.

Furthermore, "[i]f the director determines that the interests of the department are not compromised by a proposed or existing encroachment, he may issue a license to the owner or his agent permitting an encroachment on the highway." NRS § 408.210.4. Thus, it appears that the State regards the

---

**1.**  The missions of Earth Friends, Inc., Earth Children, Inc., and Bhaktivendanta Mission, Inc., are to "promote spiritual ecology and ecological consciousness." Plaintiffs' Complaint (# 1), at 3. The mission of International Missing Children Bulletin, Inc., is "to promote the protection of children from kidnapping through the use and maintenance of current identification data and through awareness and the exercise of reasonable safety precautions." *Id.* at 4.

**2.**  NRS § 408.070 defines "highway" as:
roads, bridges, structures, culvert, curbs, drains, and all buildings, communication facil-

ities, services and works incidental to highway construction, improvements and maintenance required, laid out, constructed, improved or maintained as such pursuant to constitutional or legislative authorization.

**3.**  NRS § 408.050 defined "encroachment" as:
any tower, pole, pole line, wire, pipe, pipeline, fence, billboard, approach road, driveway, stand or building, crop or crops, flora, or any structure which is placed in, upon, under or over any portion of highway rights of way.

placing of items such as tables, chairs, umbrellas, etc., on the public sidewalks as an encroachment subject to the licensing provisions of NRS § 408.210.

## III. DISCUSSION

■ To obtain a preliminary injunction, Plaintiffs must make a clear showing of either: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief. *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994) (citing *Adultworld Bookstore v. City of Fresno,* 758 F.2d 1348, 1351 (9th Cir.1985); *Ebel v. City of Corona,* 698 F.2d 390, 392 (9th Cir.1983)). The Court notes that "these are not two separate tests, but 'merely extremes of a single continuum.'" *Id.* (citation omitted).

[A] moving party need not demonstrate that he risks irreparable injury, but he must at least show that he will suffer a degree of hardship that outweighs the hardship facing the opposing party if the injunction is not issued. Similarly, a moving party need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation.

*Id.*

■ "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir.1990).[4] Moreover, "in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals,*

---

4. At this stage, the Court need not determine the ultimate issue of whether application the statute is actually constitutional. Rather the Court "must only determine whether [Plaintiff] has met [its] burden to show a preliminary injunction is appropriate." *Janra Enterprises, Inc. v. City of Reno,* 818 F.Supp. 1361, 1363 (D.Nev.1993).

5. The *Gaudiya* court also noted, however, that its opinion did not address the case of sales of

---

*Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir. 1992) (citations omitted).

### A. Probability of Success on the Merits

In assessing the likelihood of Plaintiffs' success on the merits, the Court must first determine whether Plaintiffs' activities can be characterized as "expressive" and therefore entitled to First Amendment protection. If Plaintiffs' activities are so entitled, the Court must then ascertain whether the State's regulatory scheme impermissibly infringes upon those rights.

■ It is clear that the Ninth Circuit considers the sale of message-bearing merchandise to be activity entitled to full First Amendment protection. *Gaudiya Vaishnava Soc. v. City of San Francisco,* 952 F.2d 1059 (9th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). In *Gaudiya,* the Ninth Circuit considered a challenge brought by various nonprofit organizations to a San Francisco ordinance which prohibited the selling of merchandise in specific areas within the city. The *Gaudiya* plaintiffs asserted that the sale of their merchandise was entitled to first amendment protection because it contained political, religious, philosophical, or ideological messages. The court held that "where nonprofits engage in activities where pure speech and commercial speech are inextricably intertwined the entirety must be classified as fully protected noncommercial speech." *Id.* at 1066.

Here, as in *Gaudiya,* Plaintiffs allege that their T-shirts contain "political, religious, philosophical or ideological messages" relating to the various missions of their organizations. Thus, to the extent this merchandise is "inextricably intertwined" with "pure speech", the T-shirts, and the sale thereof, must be classified as constitutionally protected.[5]

---

merchandise not inextricably intertwined with First Amendment speech. The court stated that such cases would presumably fall under the rule of *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), and that "[i]f the speech element was purely commercial, a political or religious message not intertwined with that commercial message would be insufficient to transform the whole into protected speech." *Gaudi-*

The State, however, has not taken exception with Plaintiffs' activities in selling their merchandise per se. The dispute lies with Plaintiffs' wish to sell their message-bearing T-shirts through the use of portable tables, chairs, umbrellas, boxes and signs on the public sidewalks adjacent to the Strip. According to the State, these items constitute the encroachment subject to licensing under NRS § 408.210. Thus, the issue is whether setting up of portable tables, chairs, umbrellas, boxes, and signs in connection with the sale of expressive materials is also protected activity.

### 1. Portable tables.

Plaintiffs assert that the use of portable tables is protected because they are a means of disseminating their message-bearing T-shirts on the public sidewalks. They argue that the use of portable tables to facilitate their message is analogous to the use of newsracks by newspaper publishers; an activity found to be protected by the First Amendment. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1987). The State, on the other hand, argues that a First Amendment analysis is not appropriate here because there is no constitutional right to erect a structure on public property. In support of its position, the State cites the recent opinion of the Seventh Circuit in *Graff v. City of Chicago*, 9 F.3d 1309 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994), which held that the construction and operation of a newsstand on public property was conduct, not speech, which the city could lawfully proscribe. *Id.* at 1315.

Very recently, two federal district courts have considered the issue of whether using portable tables on public sidewalks in connection with the dissemination of expressive materials is itself constitutionally protected activity. *See One World One Family Now v. City of Key West*, 852 F.Supp. 1005 (S.D.Fla. 1994) (finding that portable T-shirt tables fall within the constitutional protections of expressive activity); *International Caucus of*

*Labor Committees v. City of Montgomery*, 856 F.Supp. 1552 (M.D.Ala.1994) (same); *but see International Caucus of Labor Com. v. Dade County*, 724 F.Supp. 917 (S.D.Fla.1989) (holding, without analysis, that the use of tables is not expressive conduct protected by the First Amendment). In both *One World* and *Montgomery*, the parties made similar arguments and cited many of the same cases as the parties presently before this Court.

The plaintiff in *One World*, a nonprofit corporation, wanted to set up portable tables on the public sidewalks of Key West's commercial and historic district in connection with the sale of message bearing T-shirts. In considering whether a preliminary injunction should issue, the court first found *Gaudiya* persuasive on the issue of whether the sale of message-bearing T-shirts is entitled to First Amendment protection. 852 F.Supp. at 1008. Next, the court addressed the issue of the maintenance of portable tables and found it to be protected activity because portable tables more closely resemble newsracks than newsstands. *Id.* at 1009.

Similarly, in *Montgomery*, the court addressed the issue of whether a policy prohibiting the placement of tables on City sidewalks violated the First Amendment. The court began by dismissing the City's argument that no First Amendment analysis was warranted because "the use of tables was not necessary to the distribution of the plaintiff's literature." 856 F.Supp. at 1557. In concluding that the ban was unconstitutional, the court found that the table, like the newsrack, "facilitates the 'freedom to speak, write, print or distribute information or opinion.'" *Id.* (quoting *Schneider v. State*, 308 U.S. 147, 160–161, 60 S.Ct. 146, 150–151, 84 L.Ed. 155 (1939)).

■ This Court finds the reasoning of *One World* and *Montgomery* to be persuasive and concludes that use of portable tables as a means of disseminating message-bearing T-shirts is entitled to First Amendment protection. Contrary to the State's assertions, un-

---

*ya*, 952 F.2d at 1064 n. 5. Here, the State contends that some of Plaintiffs' merchandise

cannot be considered protected under the *Gaudiya* standard.

like the newsstands in *Graff*, the tables at issue here are relatively small and are portable rather than permanent. *One World*, 852 F.Supp. at 1009. These factors support the conclusion that speech rather than conduct is occurring here. Moreover, because the portable tables are used to advocate one particular viewpoint, there exists a significant danger that "regulations which are not narrowly tailored could result in the chilling of certain speech." *Id.* (citing *Graff*, 9 F.3d at 1316). Accordingly, Plaintiffs have succeeded in demonstrating that there exists a strong likelihood that their use of portable tables on public sidewalks should be characterized as "expressive" and therefore entitled to First Amendment protection.

2. Chairs, umbrellas, boxes and signs.

■ Although Plaintiffs' use of portable tables is likely to be afforded First Amendment protection, the same cannot be said for Plaintiffs' use of chairs, umbrellas, and boxes. The use of tables on public sidewalks is protected only to the ·extent that its use "facilitates" the exercise of expressive activities. *Montgomery*, 856 U.S. at 1557. For example, placing a table on a public sidewalk to sell ice cream is not entitled to protection under the First Amendment because the table's use in this context is not for expressive purposes. In the case at bar, the use of the tables clearly facilitates the dissemination of Plaintiffs' message because it allows Plaintiffs to display their message-bearing T-shirts to the public.

■ In contrast, the chairs, umbrellas, and boxes do not possess a similar nexus to the facilitation of Plaintiffs' message. Plaintiffs have failed to demonstrate how these items are used to facilitate their message other than to provide comfort and convenience of vendors who attend to the tables. Furthermore, in placing these items along the public streets next to their tables, Plaintiffs come closer to creating a permanent-type "structure" similar to the newsstand in *Graff*. Consequently, the Court finds that it is unlikely that Plaintiffs will succeed in demonstrating that the use of chairs, umbrellas, and boxes on public sidewalks should be

characterized as "expressive" and therefore entitled to First Amendment protection. The Court finds that Plaintiffs' signs, however, do facilitate their message and are therefore entitled to First Amendment protection.

3. The State's licensing scheme.

"The Supreme Court has repeatedly recognized public streets 'as the archetype of a traditional public forum.'" *Gaudiya*, 952 F.2d at 1065 (citing *Frisby v. Shultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)).

In these traditional public fora, the government's authority to restrict speech is at its minimum. Time, place, and manner restrictions are valid only if they are content-neutral, narrowly tailored to serve a significant government interest, and retain ample alternative channels of communication. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 [103 S.Ct. 948, 74 L.Ed.2d 794] (1983). As an application of the requirement that restrictions be narrowly tailored, a law cannot condition the free exercise of First Amendment rights on the "unbridled discretion" of government officials. *City of Lakewood [v. Plain Dealer Publishing Co.*, 486 U.S. 750 at 755], 108 S.Ct. [2138] at 2143 [100 L.Ed.2d 771 (1988)].

*Id.*

■ Put another way, having found that the placing of tables on public sidewalks for the purpose of distributing message-bearing T-shirts is likely to be classified as protected by the First Amendment, the State's application of NRS § 408.210 is subject to strict constitutional scrutiny. *Burson v. Freeman*, — U.S. ——, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

■ In this case, to be able to place their tables on public sidewalks, Plaintiffs would have to apply to the director of the Nevada Department of Transportation for a license. "If the director determines that the interests of the department are not compromised by a proposed or existing encroachment, he *may* issue a license to the owner or his agent permitting an encroachment on the highway." NRS § 408.210.4 (emphasis added).

As applied to the placement of the tables, the State's licensing scheme is clearly constitutionally suspect. It provides "no specific grounds for granting or denying permits: no explicit limits are placed on [the director's] discretion." *Gaudiya*, 952 F.2d at 1066. This discretion creates the danger "of selective enforcement on the basis of the content of the speech." *Id.* (quoting *N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346, 1357 (9th Cir.1984)).

Therefore, at this stage, the Court finds that there is a substantial likelihood that Plaintiffs' constitutional claim with regard to the placement of tables and signs will succeed on the merits. With regard to the placement of chairs, umbrellas, and boxes, however, the Court finds Plaintiffs have not demonstrated a likelihood of success because the Court finds that the use of these items "is conduct, not speech, which [the State] can lawfully proscribe." *Graff*, 9 F.3d at 1315.

### B. *Irreparable Injury*

Should a preliminary injunction not issue, Plaintiffs would be subject to the discretionary licensing provisions of NRS § 408.210. Having demonstrated that they are likely to succeed on their constitutional claim, however, it is clear Plaintiffs will suffer irreparable injury because "[i]t is undisputed that the loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Sabelko v. City of Phoenix*, 846 F.Supp. 810, 816 (D.Ariz.1994).

### C. *Balance of Hardships*

Having demonstrated a likelihood of success on the merits and irreparable injury, Plaintiffs are entitled to a preliminary injunction. Nevertheless, the Court additionally notes that the balance of hardships tips decidedly in Plaintiffs' favor. Plaintiffs have already shown that they will suffer irreparable injury if a preliminary injunction should not issue because the State has threatened to remove their tables or subject them to a fine. This would significantly impede Plaintiffs'

ability of disseminate their message-bearing T-shirts.

The State, conversely, argues that these tables pose a safety hazard to pedestrians travelling along the Strip. Although theoretically the possibility of such a hazard might exist, at this point, the State has not put forth sufficient evidence to justify impinging upon the exercise of Plaintiffs' First Amendment rights in their effort to address these concerns. Consequently, the State has simply failed to demonstrate a level of harm which sufficiently outweighs the harm that will befall Plaintiffs should a preliminary injunction not issue.

### D. *Public Interest*

"The First Amendment reflects a 'profound national commitment' to the principle that debate on public issues should be uninhibited, robust, and wide-open ... and [the Supreme Court] has consistently commented on the central importance of protecting speech on public issues." *Sabelko*, 846 F.Supp. at 815 (quoting *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988) (citations omitted)). Allowing Plaintiffs to continue disseminating their message bearing T-shirts, at least during the pendency of this suit, serves that purpose. As the *One World* court noted, "the public's interest in safeguarding the fundamental rights of the First Amendment outweighs any competing public interest in the ... maintenance of the public walkways." 852 F.Supp. at 1013. Accordingly, the Court finds that the public interest favors the issuance of a preliminary injunction.

Moreover, it should be clear to the parties that this Preliminary Injunction does not enjoin Defendants, or any other governmental entity from enforcing other lawful ordinances with respect to Plaintiffs.

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion for a Preliminary Injunction (# 2) is Granted to the following extent:

A. That to qualify for First Amendment protection the content of *all the message-bearing merchandise* sold by Plaintiffs must be inextricably intertwined with the purposes and activities of Plaintiffs'

organization. ***All the message-bearing merchandise*** must contain a ***conspicuous*** political, religious, philosophical or ideological message having intellectual content which conveys a message that is informative of the purpose of Plaintiffs' organization and which is ***permanent, readable and recognizable from a reasonable distance.*** Expressions—such as the words "Las Vegas" which are not inextricably intertwined with Plaintiffs' message—are not protected speech.

B. That to the extent Plaintiffs use portable tables and signs to disseminate such message-bearing merchandise, as defined above, Defendants State of Nevada, Nevada Department of Transportation, and Kent Mayer, P.E., their agents, officers, servants, employees, independent contractors, and any others in active concert or participation with any of them, are enjoined from enforcing Nev.Rev.Stat. § 408.210 against Plaintiffs by requiring Plaintiffs to obtain licenses for, or remove, their portable tables and signs from the sidewalks bordering Las Vegas Boulevard South from Sahara Avenue to Russell Road, and from fining Plaintiffs, pursuant to Nev.Rev.Stat. § 408.210 or any notice given thereunder, for using such portable tables and signs.

IT IS FURTHER ORDERED THAT the bond posted by Plaintiffs in the amount of one-thousand dollars ($1,000.00) shall continue and secure the payment of such costs and damages as may be suffered or sustained by any party who may be wrongfully restrained by this Preliminary Injunction.

IT IS FURTHER ORDERED THAT this Preliminary Injunction shall not be construed by any party to enjoin Defendants from enforcing any other lawful ordinances, including safety ordinances, with respect to Plaintiffs, and it is limited solely to any attempts by Defendants to force Plaintiffs to obtain licenses for, or remove, their portable tables and signs pursuant to Nev.Rev.Stat. § 408.-210.