United States Court of Appeals,

Eleventh Circuit.

No. 94-6699.

The INTERNATIONAL CAUCUS OF LABOR COMMITTEES, Richard Boone, Reverend, individually and as a member of International Caucus of Labor Committees, Gary D. Kanitz, individually and as a member of International Caucus of Labor Committees, Gerald E. Berg, individually and as a member of International Caucus of Labor Committees, Plaintiffs-Appellees,

v.

The CITY OF MONTGOMERY, The City of Montgomery Police Department, John Wilson, in his official capacity as Chief of Police of the City of Montgomery, Defendants-Appellants.

May 9, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV 93-H-519-N), Truman M. Hobbs, Judge.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

The opinion originally issued in this case is withdrawn. *International Caucus of Labor Comms. v. City of Montgomery,* 87 F.3d 1275 (11th Cir.1996). The following opinion is issued as the opinion of the Court on this appeal.

This case involves a challenge to the constitutionality of a city policy banning tables from city sidewalks. On two occasions, plaintiffs, The International Caucus of Labor Committees and three of its members, were distributing literature from a card table placed on the sidewalk when police told them to leave or submit to arrest. The district court found that The International Caucus is an organization devoted to altering the contemporary political landscape. It distributes literature and recruits new members in several ways. One of its preferred ways is to place tables in public areas in an effort to attract people to take its literature from these tables. Plaintiffs wrote a letter to the City explaining their desire to promote their views "by setting up literature tables at public sites." The City's responsive letter banned tables from city sidewalks. The letter stated in relevant part:

Your actions do not violate the laws of this city unless you impede the orderly flow of traffic in the streets and at the street corners.

Your organization will not be allowed to set up tables or booths on the sidewalks of this city. These tables or booths would create a partial blockage of pedestrian traffic and therefore will

not be allowed on the sidewalks. Your organization may set up tables or booths on private property where you have the permission of the property owner.

The City maintains that its policy is a complete ban of any tables on all sidewalks.

Plaintiffs sued the City of Montgomery, its police department and police chief, seeking a declaration that the City's policy violated plaintiffs' First Amendment right of free speech and to enjoin the City from denying plaintiffs the right to distribute political literature from tables placed on the sidewalks.

The district court, in a carefully constructed opinion, entered a declaratory decree that the City's ban excessively and unnecessarily infringes on the plaintiffs' rights guaranteed by the First Amendment. *International Caucus of Labor Comms. v. City of Montgomery,* 856 F.Supp. 1552 (M.D.Ala.1994). The court initially held that the placement of tables on city sidewalks is subject to First Amendment scrutiny, and that the ban is content neutral so that it is subject to the time, place and manner test set out in *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753-54, 105 L.Ed.2d 661 (1989). The court then held *first,* it is inappropriate to conclude on this record that the City's interests are significant ones; *second,* even if the City's interests are viewed as significant, the regulation is not narrowly tailored to serve those interests; and *third,* since the ban fails the narrow tailoring requirement, the court need not decide whether the ban leaves ample alternative means of communication open. The court denied an injunction with confidence that the defendants would abide the declaration that the ban is unconstitutional.

We reverse on the ground that a ban against tables on sidewalks, contrary to the decision of the district court, satisfies the time, place and manner test required when the actions of a city implicate the First Amendment.

Preliminarily, there was some question as to whether the issue was properly before the court. Some consideration has been given by the panel and in the supplemental briefing and reargument to the fact that the policy here challenged is in the form of a letter from the City Attorney, rather than being incorporated in a duly adopted city ordinance. The parties agree, however, that the policy of banning all tables from city sidewalks is the fixed policy of the City which will be enforced by the police, the transgression of which would lead to trouble for the plaintiffs. The parties are entitled

to a decision on the constitutionality of such a policy. This Court previously has considered the constitutionality of an "unwritten" scheme for regulating newsracks in interstate areas. *Sentinel Communications Co. v. Watts,* 936 F.2d 1189 (11th Cir.1991).

When the government seeks regulation that restricts content neutral expressive activity in a public forum, the First Amendment requires that the regulation satisfy the time, place, and manner test. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983).

A sidewalk, although specifically constructed for pedestrian traffic, also constitutes a public forum. *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988) (" "[T]ime out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum."). The Supreme Court has repeatedly held that public streets and sidewalks are traditional public fora. *Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988); *Perry Education Ass'n.,* 460 U.S. at 44, 103 S.Ct. at 954.

Pamphleteering and the distribution of literature constitute expressive activity protected by the First Amendment. *Talley v. State of California,* 362 U.S. 60, 63-64, 80 S.Ct. 536, 538, 4 L.Ed.2d 559 (1960). The cases clearly hold that the distribution of literature is a type of speech protected by the First Amendment. *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Schneider v. State,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939); *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

In the present case, therefore, the City of Montgomery is regulating expressive activity in a public forum. Consequently, the district court correctly held that the regulation must pass the time, place, and manner test. The district court erred, however, in its application of the time, place, and manner test.

In reviewing the district court's application of this test, we utilize a *de novo* standard of review concerning issues of law and the district court's application of the law to the facts. *Simmons v. Conger,* 86 F.3d 1080, 1084 (11th Cir.1996).

The City may impose reasonable restrictions on the time, place, and manner of protected

speech in a public forum as long as the restrictions (1) are content neutral, (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753-54, 105 L.Ed.2d 661 (1989).

The district court properly held that the first prong of this test was satisfied: Montgomery's ban was content neutral, both on its face and as applied.

The district court erred, however, in holding that the second prong was not met. The district court's analysis as to this prong was wrong in two respects:

*First,* the district court incorrectly concluded that the City of Montgomery's interests in enacting the table ban were not significant. The first priority of a sidewalk is for the use of pedestrians. The City's interests, as stated in the ban itself, include "the orderly flow of traffic in the streets and at the street corners" and the prevention of "a partial blockage of pedestrian traffic" on the city sidewalks. It is well settled that "a State's interest in protecting the "safety and convenience' of persons using a public forum is a valid governmental objective." *Heffron v. International Society For Krishna Consciousness,* 452 U.S. 640, 650, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981). *See also Messer v. City of Douglasville, Ga.,* 975 F.2d 1505, 1510 (11th Cir.1992) (holding that "both traffic safety and aesthetics are substantial governmental goals"). As the Supreme Court stated, "[M]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated." *Schneider v. State of New Jersey,* 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939).

To demonstrate the significance of its interest, the City is not required to present detailed evidence of pedestrian or traffic flow on or around specific sidewalks; the City is "entitled to advance its interests by arguments based on appeals to common sense and logic." *Multimedia Publishing Co. of S. Carolina, Inc. v. Greenville-Spartanburg Airport,* 991 F.2d 154, 160 (4th Cir.1993). We hold that the City has adequately demonstrated the significance of its interest.

*Second,* the district court erred in holding that the regulation was not narrowly tailored to

achieve the City's interest. To satisfy the requirement of narrow tailoring, the City may not impose a regulation that will "burden substantially more speech than is necessary to further the government's legitimate interests;" nor may the City impose a regulation in which "a substantial portion of the burden on speech does not serve to advance its goals." *Ward,* 491 U.S. at 799, 109 S.Ct. at 2758. Although the disputed regulation must be narrowly tailored to serve legitimate interests of the City, it "need not be the least restrictive or least intrusive means of doing so." 491 U.S. at 798, 109 S.Ct. at 2757-58.

In the present case, the City's objective is to prevent the hindrance to pedestrian traffic and the congestion on the City's streets and sidewalks. To achieve this objective, the City is not prohibiting all speech activities on the sidewalks. Individuals and organizations can continue to speak, distribute their literature and solicit contributions on the sidewalk. The district court erred in characterizing the city's regulation as "a complete ban on a certain form of expressive activity." 856 F.Supp. 1552, 1558 (M.D.Ala.1994). Instead, the City's regulation is targeted toward preventing sidewalk obstructions: only the use of tables, and no other speech-related activity, is prohibited.

The City of Montgomery has identified an overall problem, obstructed streets and sidewalks, and has chosen a regulation which has a limited effect on individuals' free speech rights to remedy that problem. The City need not show that every table placed on the sidewalk would create an unwanted obstruction: "the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Ward,* 491 U.S. at 801, 109 S.Ct. at 2759. Consequently, we hold that the regulation is narrowly tailored to achieve the City's interests. 491 U.S. at 800, 109 S.Ct. at 2758. (" "The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted.").

As to the third prong of the time, place, and manner test: the regulation leaves open ample alternative channels for communication of the information. The district court did not reach this issue

because it held that the City's regulation did not satisfy the second prong. This third prong is easily met. The regulation explicitly states that individuals are free to hand out literature and solicit contributions on the sidewalks and to set up tables on private property. Moreover, the regulation does not prohibit tables on other public properties like city parks. In short, only the erection of tables on city sidewalks is proscribed; all other methods of communication are left open. We hold that Montgomery's regulation leaves open ample alternative channels for communication. *See Frisby,* 487 U.S. at 483, 108 S.Ct. at 2502. ( [T]he limited nature of the prohibition [here] makes it virtually self-evident that ample alternatives remain....").

There is little direct authority to guide a decision on the extent to which the use of portable tables on public sidewalks enjoys First Amendment protection. There are no Supreme Court cases. Only the Seventh Circuit has dealt with the issue. It directly held that the erection of a table is not constitutionally protected free speech. "Subsection E (of the Regulation) prohibits the erection of a table, chair or other structure in areas other than leased space.... Because this section does not facially restrict the exercise of guaranteed rights, we do not find it is constitutionally impermissible." *International Society for Krishna Consciousness v. Rochford,* 585 F.2d 263, 270 (7th Cir.1978). In a case involving an almost identical regulation where "the plaintiffs alleged only that they have been prohibited from setting up tables," the same court declined to "overrule *Rochford* on this point." *International Caucus of Labor Comms. v. City of Chicago,* 816 F.2d 337, 339 (7th Cir.1987).

No other circuits appear to have dealt with the point. Several district courts have struggled with the issue, as did the district court in this case. Two cases in the Southern District of Florida go opposite ways. In *International Caucus of Labor Comms. v. Metropolitan Dade County, Fla.,* 724 F.Supp. 917, 920 (S.D.Fla.1989), Judge Zloch followed the Seventh Circuit cases in holding "that the use of tables is not expressive conduct protected by the First Amendment." In a later case which did not refer to Judge Zloch's decision, Judge King, torn between the decision involving *newsstands* in *Graff v. Chicago,* 9 F.3d 1309, 1314 (7th Cir.1993) ("no person has a constitutional right to erect or maintain a structure on the public way."), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994), and the *newsracks* decision by this Court in *Sentinel Communications Co. v.*

*Watts,* 936 F.2d 1189, 1196 (11th Cir.1991) ("there is "no doubt' that the right to distribute and circulate newspapers through the use of newsracks is protected by the first amendment."), decided that portable tables for selling T-shirts carrying protected speech message "more closely resemble the newsracks in the *Sentinel* case" and fell within the constitutional protection of expressive conduct. *One World One Family Now v. City of Key West,* 852 F.Supp. 1005 (S.D.Fla.1994). *See also One World One Family Now Inc. v. State of Nev.,* 860 F.Supp. 1457, 1463 (D.Nev.1994).

Because there is no Supreme Court authority to guide a decision as to tables on public sidewalks, the courts have drawn analogies with the cases involving newsracks and newsstands. Although newsracks historically and by custom differ from tables on the sidewalk and therefore might enjoy more constitutional protection, there is no Supreme Court holding that deals with the constitutional implications of a *complete* ban of *newsracks* one way or the other. At least the Supreme Court did not think so in 1988 in *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The dissent in that case says:

> The Court quite properly does *not* establish any constitutional right of newspaper publishers to place news racks on municipal property. The Court expressly declines to "pass' on the question of the constitutionality of an outright municipal ban on news racks. *Ante,* at 762, n. 7 [108 S.Ct. at 2147].... In any event, the Court's ruling today cannot be read as any indication to the contrary: *cities remain free after today's decision to enact such bans.* (emphasis added).

486 U.S. at 773, 108 S.Ct. at 2152 (White, J. dissenting). Footnote 7 of the majority opinion says: "[W]e do not pass on its [the dissents] view that a city may constitutionally prohibit the placement of newsracks on public property." 486 U.S. at 762, 108 S.Ct. at 2147.

A majority of the nine Justices of the Supreme Court have suggested that an outright ban on newsracks on city sidewalks would be constitutional: Chief Justice Rehnquist and Associate Justices Stevens, O'Connor, Kennedy, Thomas, and Ginsburg.[1]

---

*Lakewood* involved an ordinance the majority thought gave too much discretion to the Mayor, not a complete ban. Justices White, Stevens, and O'Connor in their dissent in said: "our precedents suggest that an outright ban on newsracks on city sidewalks would be constitutional." 486 U.S. at 773, 108 S.Ct. at 2152.

In a dissenting opinion in *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 445, 113 S.Ct. 1505, 1525, 123 L.Ed.2d 99 (1993), Chief Justice Rehnquist, joined by Justice Thomas, said: "In my view, the city may order the removal of *all* newsracks

Without specific guidance from Supreme Court decisions, however, it is appropriate that this Court apply the usual time, place and manner test to each situation, as it arises. The regulation here having passed that test, the City did not act unconstitutionally in this matter. We reverse the decision of the district court.[2]

REVERSED.

ANDERSON, Circuit Judge, dissenting:

I agree with the majority opinion that the City of Montgomery's policy does regulate expressive activity in a public forum and therefore must pass the time, place and manner test. However, I disagree with the majority's conclusion that the City's policy passes the narrow-tailoring prong of the time, place and manner test. Thus, I respectfully dissent.

As correctly stated by the majority, the crucial question is whether the City's regulation "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989). In other words, "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* The City has

from its public right-of-ways if it so chooses."

Justices Kennedy and Ginsburg and Thomas concurred in Justice Stevens' opinion in *44 Liquormart, Inc. v. State of Rhode Island,* --- U.S. ----, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), which contained this comment in footnote 20:

[I]n *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), we assumed that States could prevent all news racks from being placed on public sidewalks, but nevertheless concluded that they could not ban only those news racks that contained certain commercial publications. *Id.,* at 428, 113 S.Ct. at 1516.

Although Stevens' interpretation of *Cincinnati* may be questionable, nevertheless, he assumes that states could prevent all newsracks from being placed on public sidewalks.

Judge Anderson would hold that the City's ban is unconstitutional as applied to grassy areas between the curb and the concrete walkway, reasoning that the ban there was not narrowly tailored to protect the same interest the City had in the sidewalks. This part of the ban should present no problem. As defined by the Code of the City of Montgomery, the "sidewalk" includes only those areas "intended for use of pedestrians," § 25-1 (1930), whether the areas be concrete or grassy. The City has the same interest in pedestrian traffic in all parts of the sidewalk, whether concrete or grassy. Pedestrians must use the grassy area, for example, to enter and exit vehicles from the sidewalk. If it is an area that pedestrians do not use, the ban would not apply.

the burden of proving that its policy is narrowly tailored to serve a significant governmental interest. *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989). To apply this standard, it is necessary to identify precisely the interests asserted by the City and the nature of the ban itself. As justification for its regulation, the City asserts a single interest—i.e., avoiding partial blockage of or interference with pedestrian traffic.[1] Both the majority opinion, *supra* at ----, and the district court opinion focus on this single interest of the City.

I turn next to the precise nature of the City's regulation. The nature of the City's regulation is not disputed: it is a complete ban on any use of tables anywhere on any sidewalk of the City. A crucial fact relating to the nature of the City's ban is the fact that it applies not only to the concrete walkway upon which pedestrians generally travel, but also to the grassy areas between the street curb and the concrete walkway. The parties so agreed in the district court, and the court accepted same as a finding of fact.[2] Indeed, the two instances which triggered this case involved application of the City's ban to tables the plaintiffs set up on these grassy areas. It is this crucial fact which makes it clear to me that the City's ban as applied in the instant case burdens substantially more speech than is necessary to further the City's interest. As noted above, the single interest asserted by the City as justification for the ban is avoiding interference with pedestrian traffic. However, it is clear that there is little or no pedestrian traffic on the grassy areas. The district court implicitly so found; it found that "pedestrians generally travel" on the concrete walkways. 856 F.Supp. at 1554 n. 1. Moreover, the district court explicitly found that the City had adduced no evidence at all of actual interference with pedestrian traffic. Indeed, the district court found that "the City's contention ... [regarding] the *potential* for pedestrian obstruction ... was totally unsubstantiated."

---

The City also asserts that there are certain foreseeable risks to the safety of pedestrians which would arise from interference with pedestrian traffic. However, this interest is merely derivative from the one stated in text.

After noting the City ordinance defining a sidewalk, the district court stated: "The parties agree that the City's ban on placing tables on sidewalks applies to tables placed on the grassy area between the street curb and the concrete walkway. The term "concrete walkway' ... refers to the paved region of the sidewalk upon which pedestrians generally travel." 856 F.Supp. at 1554 n. 1.

*Id.* at 1559. Finally, it is obvious as a matter of common sense and common experience that the City does not expect pedestrian traffic on the grassy areas, other than an occasional crossing.

In sum, the City simply has not met its burden of proving that its ban is narrowly tailored to serve its interest in avoiding interference with pedestrian traffic. In the language of *Ward,* the City has "burden[ed] substantially more speech than is necessary to further the ... [City's] legitimate interests." 491 U.S. at 799, 109 S.Ct. at 2758.

*United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), provides strong support for my position. There, the Court addressed a statute banning the "display [of] any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement" in the Supreme Court building and on its grounds. 461 U.S. at 172-73, 103 S.Ct. at 1704-05. The Court concluded that the statute, "which totally ban[ned] the specified communicative activity on the public sidewalks around the Court grounds," *id.* at 181, 103 S.Ct. at 1709, could not be justified as a reasonable time, place, and manner restriction because it did not "sufficiently serve those public interests that are urged as its justification." *Id.* In support of its conclusion, the Court wrote:

> We do not denigrate the necessity to protect persons and property or to maintain proper order and decorum within the Supreme Court grounds, but we do question whether a total ban on carrying a flag, banner, or device on the public sidewalks substantially serves these purposes. There is no suggestion, for example, that appellees' activities in any way obstructed the sidewalks or access to the building, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds.

*Id.* at 182, 103 S.Ct. at 1709-10. Because it concluded that none of the proffered State interests was sufficiently served by the ban, the Court held that the statute could not constitutionally be applied to the public sidewalks on the perimeter of the Supreme Court grounds. *Id.* at 183, 103 S.Ct. at 1710. Just as the ban in *Grace* could not be applied to the public sidewalks bordering the Court grounds, I would conclude that the City's ban in this case cannot be applied to the plaintiffs' expressive activity on the grassy areas. In my judgment, the City's interest in the instant case is furthered by banning tables on the grassy areas even less than the governmental interests were served by the ban which was disallowed by the Supreme Court in *Grace.*

The majority opinion takes some comfort from the fact that a number of the Justices of the

Supreme Court have indicated in dicta or in dissents that they would approve a complete ban prohibiting newsracks on city sidewalks. *See supra* at ---- - ---- (citing dicta in *44 Liquormart, Inc. v. Rhode Island,* --- U.S. ----, ---- n. 20, 116 S.Ct. 1495, 1513 n. 20, 134 L.Ed.2d 711 (1996),[3] and dissents in *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 444-46, 113 S.Ct. 1505, 1525, 123 L.Ed.2d 99 (1993) (Chief Justice Rehnquist and Justices White and Thomas, dissenting), and *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 2152, 100 L.Ed.2d 771 (1988) (Justices White, Stevens and O'Connor, dissenting)). In my disposition of this case, I can assume *arguendo* that it would be permissible for a city to adopt a complete ban prohibiting all newsracks from its sidewalks.[4] I assume that sustaining such a ban would be based upon a city's legitimate interests in avoiding interference with pedestrian traffic and/or protecting aesthetic values, as Justice White's *Plain Dealer* dissent suggests. In the instant case, the City of Montgomery has not asserted aesthetics as an interest justifying its action, and thus I need not address the possibility that such an interest might warrant such governmental action.[5] With respect to a city's interest in avoiding interference with pedestrian traffic, I note that the situation addressed in the *Plain Dealer* and *City of Cincinnati* dissents presumably involved newsracks located on the paved portion of the sidewalk which is regularly utilized by pedestrians. In that context, it may well

---

The dicta in the plurality opinion of Justices Stevens, Kennedy, Thomas, and Ginsburg in *Liquormart* merely refers to the *assumption* in *City of Cincinnati* that governments could prohibit all newsracks on public sidewalks. Neither the *Liquormart* plurality nor the *City of Cincinnati* majority said even in dicta that such a prohibition was in fact constitutional.

Justice White's dissent in *Plain Dealer* contains the only discussion of the rationale which might support the validity of a complete ban prohibiting newsracks from city sidewalks. The broad concern expressed by Justice White was to keep the sidewalks free for the use of all members of the public, rather than to permit the appropriation of city property for the *exclusive* use of the newspaper's *semi-permanent* newsracks. 486 U.S. at 778-81, 108 S.Ct. at 2155-57. In my judgment, Justice White's concerns are not implicated in this case. Plaintiffs' tables are not permanent; plaintiffs merely used card tables, and there was no appropriation of city property for their exclusive use. Quite the contrary, plaintiffs' tables on grassy areas did not interfere with pedestrian traffic and were wholly consistent with use of the sidewalk by the public for its intended purpose, i.e., pedestrian traffic. In my opinion, plaintiffs' tables are very different from the newsracks in the *Plain Dealer* and *City of Cincinnati* dissents; plaintiffs' use of the public property is more akin to a pedestrian with a wheelbarrow.

This is still another factor distinguishing the instant case from the case addressed by the dissenting Justices in *Plain Dealer* and *City of Cincinnati*.

be that a city's determination of means to avoid interference with pedestrian traffic need not be more discriminating than to decide that there should be no permanent or semi-permanent structures partially blocking paved sidewalks set aside exclusively for pedestrian traffic. In the context of newsracks on paved sidewalks, there may be no clear and obvious line of demarcation between newsracks that are likely to obstruct pedestrian traffic and those that are not.[6]

By contrast, in this case, there is such a clear demarcation. It is clear beyond peradventure that card tables on the grassy areas will not interfere with pedestrian traffic, and that any potential interference is possible *only* with respect to tables on the concrete walkways where pedestrians are expected to walk. In this case, the City's ban applies in a broad, discreet, and readily discernible range of instances where the City's stated interest is simply not furthered.[7]

In conclusion, it is clear to me that the City's ban burdens substantially more speech than is necessary to further the City's stated interest. Two considerations ineluctably point to this conclusion—i.e., the fact that tables set up on the grassy areas have not and cannot be expected to interfere with pedestrian traffic, and the clear line of demarcation separating the grassy areas where no interference can be expected from the concrete walkways where the pedestrian traffic flows.[8]

---

The logic of the majority—"the City need not show that every table placed on the sidewalk would create an unwanted obstruction," *supra* at ---- —has considerable force in that context.

The majority also relies on two Seventh Circuit decisions, *International Society for Krishna Consciousness, Inc. v. Rochford,* 585 F.2d 263 (7th Cir.1978), and *International Caucus of Labor Committees v. City of Chicago,* 816 F.2d 337 (7th Cir.1987). I find those two decisions to be weak authority for the City's position in this case. I note preliminarily that the rationale in the two opinions, even taken together, is cursory at best. More importantly, the factual situation in the two cases is easily distinguished. Like the instant case, the Seventh Circuit cases involved a ban on tables; however, both Seventh Circuit cases involved such a ban in the context of municipal airports. The limitations on space and the density of traffic in airports make it clear to me that the airport context is simply not comparable to the sidewalk context generally. The difference between the instant case and the Seventh Circuit decisions is even more pronounced. In this case, the only interest asserted by the City is avoiding interference with pedestrian traffic, and this case involves a ban on tables in the grassy areas where there is little or no pedestrian traffic. Unlike the airport context, there is in this case a clear line of demarcation separating the areas where there is no interference with pedestrian traffic from the areas where there may be such interference.

In its final footnote, the majority points to the provision of the City Code defining a sidewalk as "[t]hat portion of a street between the curb lines ... and the adjacent property lines, intended for use of pedestrians." The majority says: "If it is an area that pedestrians do not use, the ban would not apply." I would have so interpreted the ban. In other words, I would have interpreted

Thus, I would hold that the City's ban is unconstitutional as applied to the grassy areas between the curb and the concrete walkway.[9]

---

the ban *not* to apply to the grassy areas where there is little or no pedestrian traffic. However, the litigation in this case has proceeded upon the understanding that the City does apply the ban to the grassy areas, 856 F.Supp. at 1554 n. 1. Indeed, the City did so in the instant case. To the extent that the majority suggests that the City "has the same interest in pedestrian traffic," with respect to grassy areas, I respectfully disagree. The City has the burden of proof, and it adduced no evidence of pedestrian traffic on the grassy areas. The district court implicitly so found. We should not "indulge assumptions that the record—to say nothing of common sense—reveals to be invalid." 856 F.Supp. at 1560.

My analysis does not amount to a least-restrictive-means test. The Supreme Court has itself recognized that an examination of whether "there are numerous and obvious less-burdensome alternatives to the restriction [at issue]" does not amount to a least-restrictive-means test. *See City of Cincinnati,* 507 U.S. at 418 n. 13, 113 S.Ct. at 1510 n. 13. In this case, the line of demarcation between the grassy areas and the paved areas on which pedestrian traffic flows is obvious.

It is obvious to me that the single City interest, i.e., avoiding interference with pedestrian traffic, is simply not served by banning tables on grassy areas where there is little or no such traffic. Thus, under the plain meaning of the *Ward* language, the City's ban on tables in the grassy areas burdens substantially more speech than necessary to serve the City's interest. I respectfully submit that the majority's deference to the City's poorly adapted means effectively ignores the *Ward* standard.