**Mark "Bo" RITTER, et al., Plaintiffs,**

v.

**Jim BENNETT, in his capacity as Secretary of State of the State of Alabama, et al., Defendants.**

**Civil Action No. 98–T–991–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 24, 1998.

---

Mark "Bo" Ritter, Florence, AL, pro se.

A. Mark Ritter, Florence, AL, for Lewis Colley, Barry Hughes, C. Wayne Alexander.

Charles E. Grainger, Jr., Asst. Atty. General, Alabama Secretary of State's Office, Montgomery, AL, for Jim Bennett.

John J. Park, Jr., Robert M. Weinberg, Office of Attorney General, Montgomery, AL, for Bill Pryor.

Hugh R. Evans, III, Alabama Ethics Commission, Montgomery, AL, for Ethics Commission.

Edward M. George, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, for Dewey Mitchell, Richard I. Proctor, Sandy Horsley, Jimmy Stubbs, Jasper fielding, Raymond Uptagrafft, Clarence Watters and John H. Armstrong.

### MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, the plaintiffs—four individuals seeking to run for office as independent candidates in the upcoming general election in Alabama—claim that a state law requiring candidates for state office to submit a finan-

cial disclosure statement at the same time they file petitions for ballot access places an unconstitutional burden on ballot access, in violation of the first and fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983.[1] The jurisdiction of the court has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1343(a)(3). For the reasons that follow, the court will deny the plaintiffs' claim.

## I.

Plaintiffs Mark "Bo" Ritter, Lewis Colley, Barry Hughes, and C. Wayne Alexander seek to run for office as independent candidates in the November 1998 general election in Alabama. Ritter seeks to run for District Attorney of Lauderdale County. Colley, Hughes, and Alexander seek to run for the Alabama House of Representatives, in Districts 31, 65, and 7, respectively.

The plaintiffs bring this lawsuit to challenge the Secretary of State's determination that they have not qualified to appear on the ballot for this election year. To qualify for placement on the ballot, independent candi-

dates in Alabama must fulfill certain requirements. Two are relevant to this suit. First, independent candidates must submit a petition signed by a certain number of qualified electors in accordance with § 17-7-1 of the 1975 Code of Alabama.[2] In addition, under § 36-25-15 of the 1975 Alabama Code, candidates must file a financial disclosure form called a "statement of economic interests." This form must be filed "simultaneously with the date" the person seeking elective office becomes "a candidate." Under § 36-25-15 of the Code, the penalty for failure to file the statement of economic interests on the proper date is disqualification from appearing on the ballot. However, the statute does provide the opportunity to obtain an extension of time in which to file.[3]

Section 17-22A-2 of the 1975 Alabama Code, in turn, defines when a person, such as the plaintiffs, becomes "a candidate" and thus needs to file a statement of economic interests. Section 17-22A-2 defines a candidate as, among other things, "[a]n individual who has ... [t]aken the action necessary under the laws of the state to qualify himself

---

1. The plaintiffs initially also asserted an equal-protection claim and a due-process claim unrelated to their ballot-access claim. The plaintiffs have since informed the court that they are no longer pursuing those claims. *See* Plaintiffs' Statement Concerning Equal Protection and Due Process Claims, filed September 21, 1998.

2. Section 17-7-1 provides in part:
   "(a) The following persons shall be entitled to have their names printed on the appropriate ballot for the general election, provided they are otherwise qualified for the office they seek:

   . . . . .

   (3) Each candidate who has been requested to be an independent candidate for a specified office by written petition signed by electors qualified to vote in the election to fill the office when the petition has been filed with the probate judge, in the case of a county office, and with the Secretary of State in all other cases, on or before 5:00 P.M. six days after the second primary election. The number of qualified electors signing the petition shall equal or exceed three percent of the qualified electors who cast ballots for the office of Governor in the last general election for the state, county, city, district, or other political subdivision in which the candidate seeks to qualify."

3. Section 36-25-15 provides:
   "(a) Candidates at every level of government shall file a completed statement of economic interests for the previous calendar year with

the appropriate election official simultaneously with the date he or she becomes a candidate as defined in Section 17-22A-2 or the date such candidate files his or her qualifying papers with the appropriate election official, whichever date occurs first.
   "(b) Each election official who receives a declaration of candidacy or petition to appear on the ballot for election from a candidate and each official who nominates a person to serve as a public official shall, within five days of the receipt or nomination, notify the commission of the name of the candidate, as defined in this chapter, and the date on which the person became a candidate or was nominated as a public official.
   "(c) Other provisions of the law notwithstanding, if a candidate does not submit a statement of economic interests in accordance with the requirements of this chapter, the name of the person shall not appear on the ballot and the candidate shall be deemed not qualified as a candidate in that election. Notwithstanding the foregoing, the commission may, for good cause shown, allow the candidate an additional five days to file such statement of economic interests. If a candidate is deemed not qualified, the appropriate election official shall remove the name of the candidate from the ballot."

or herself ... in the case of an independent seeking ballot access, on the date when he or she files a petition with ... the Secretary of State ...." 1975 Ala.Code § 17–22A–2(a)(1)(a).[4]

The plaintiffs were disqualified for failure to timely file their statements of economic interests; that is, according to the defendants, the plaintiffs did not file the statements when they became candidates. The Secretary of State's Office reasoned that the plaintiffs became candidates within the meaning of § 17–22A–2 when they filed their petitions for ballot access, and therefore should have filed their statements of economic interests at that time. The Secretary of State's Office found that they had not done so and, accordingly, disqualified the plaintiffs.

It is undisputed that none of the plaintiffs filed his statement of economic interests at the time he filed his petition for ballot access and that none asked for an extended period of time in which to file. *Colley* filed his petition for ballot access with the Secretary of State on June 11, 1998. As of September 14, 1998, Colley had not filed a statement of economic interests with the Secretary of State's Office or the Alabama Ethics Commission.[5] *Hughes* filed his petition for ballot access but no statement of economic interests with the Secretary of State's Office on June 11, 1998. On July 1, 1998, he mailed a statement of economic interests by certified mail to the Alabama Ethics Commission, which received the form on July 5 or 6, 1998. However, Hughes had not requested an extension of time from the Ethics Commission within which to file his statement of economic interests.[6] On July 2, 1998, *Ritter* filed a petition for ballot access with the Secretary of State's Office but did not file a statement of economic interests. Ritter mailed his statement of economic interests to the Alabama Ethics Commission, which stamped it received on July 16, 1998. Ritter had not requested from the Ethics Commission an extension of time within which to file his statement of economic interests.[7] And *Alexander* filed his petition for ballot access on or about May 26, 1998. Alexander contends that he sent his statement of economic interests certified mail to the Secretary of State's Office on June 2, 1998. The Secretary of State disputes this claim. Alexander does not claim that he asked for or received an extension from the Ethics Commission within which to file his statement of economic interests. Thus, even accepting Alexander's contentions as true, there is no dispute that he did not timely file his statement of economic interests.[8]

The Secretary of State's Office sent a letter dated August 14, 1998, to the probate

4. Subsection (a)(1) of § 17–22A–2 provides:
   "(1) CANDIDATE. An individual who has done any of the following:
   a. Taken the action necessary under the laws of the state to qualify himself or herself for nomination or for election to any state office or local office or in the case of an independent seeking ballot access, on the date when he or she files a petition with the judge of probate in the case of county offices, with the appropriate qualifying municipal official in the case of municipal offices, or the Secretary of State in all other cases.
   b. Received contributions or made expenditures, or given his or her consent for any other person or persons to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to any state office or local office. Notwithstanding the foregoing, no person shall be considered a candidate within the meaning of this subdivision until the time that he or she has either received contributions or made expenditures as provided herein in the following amounts:
   1. Twenty-five thousand dollars ($25,000) or more, with a view toward bringing about nomination or election to any state office other than one filled by election of the registered voters of any circuit or district within the state.
   2. Five thousand dollars ($5,000) or more, with a view toward bringing about nomination or election to any state office, excluding legislative office, filled by election of the registered voters of any circuit or district.
   3. Ten thousand dollars ($10,000) or more, with a view toward bringing about nomination or election to the Alabama Senate and five thousand dollars ($5,000) or more, with a view toward bringing about nomination or election to the Alabama House of Representatives.
   4. One thousand dollars ($1,000) or more, with a view toward bringing about nomination or election to any local office."

5. Joint Stipulations at 1–2.

6. *Id.* at 2, 4–5.

7. *Id.* at 5.

8. *Id.* at 5.

judges of the counties in which the plaintiffs were running for office, stating that the plaintiffs' names should not appear on the November ballots due to their failure to timely file statements of economic interests.[9] The plaintiffs received copies of this letter on August 20, 1998.[10] On September 2, 1998, the plaintiffs filed a complaint naming as defendants Alabama Secretary of State Jim Bennett, Alabama Attorney General Bill Pryor, the Alabama Ethics Commission, and the probate judges of the counties in which the plaintiffs are running for office, and seeking declaratory and injunctive relief pursuant to 42 U.S.C.A. § 1983.[11]

## II.

The Civil Rights Act of 1871, 42 U.S.C.A. § 1983, under which the plaintiffs bring their federal civil rights claim, provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. As the basis for their § 1983 claim, the plaintiffs invoke their rights to vote and to associate grounded in the first and fourteenth amendments to the United States Constitution. The plaintiffs contend that the requirement under Alabama law that independent candidates file their statements of economic interests simultaneously with their petitions for ballot access constitutes an unconstitutional burden on ballot access, and thereby implicates their first and fourteenth amendment rights.

■ "Restrictions on access to the ballot burden two distinct and fundamental rights, 'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). Access restrictions implicate the right of association because "[t]he freedom to associate as a political party has diminished practical value if the party can be kept off the ballot." *Id.* Access

restrictions also implicate the right to vote because, where such restrictions keep candidates or parties off of the ballot, "the State impairs the voters' ability to express their political preferences." *Id.*

■ The plaintiffs contend that, because the simultaneous-filing requirement implicates fundamental rights, it must be struck down unless the State can show that it is narrowly tailored to achieve a compelling state interest. However, the plaintiffs' assumption that the simultaneous-filing requirement must pass strict scrutiny is erroneous. In *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992), the United States Supreme Court rejected the contention that all ballot access restrictions must be subjected to strict scrutiny. Because "[e]lection laws will invariably impose some burden upon individual voters[,] ... to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.* at 433, 112 S.Ct. at 2063. Strict scrutiny is not compelled by "the mere fact that a State's system 'creates barriers ... tending to limit the field of candidates from which voters might choose.'" *Id.* (quoting *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972)). Instead, a flexible standard applies to ballot access restrictions. *Id.* at 434, 112 S.Ct. at 2063. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)). The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens first and

9. *Id.* at 5–6.

10. *Id.* at 6.

11. The plaintiffs also brought claims under § 5 of the Voting Rights Act of 1965, 42 U.S.C.A. § 1973c. Only the plaintiffs' § 1983 claim is before this court. The plaintiffs' § 5 claims are being adjudicated by a three-judge court.

fourteenth amendment rights. *Id.* When those rights are subjected to severe restriction, the regulation must be narrowly tailored to advance a compelling state interest. *Id.* But "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1569-70).

Here, the plaintiffs have not made clear what they believe to be the character and magnitude of the burden imposed by the simultaneous-filing requirement. The plaintiffs have not explained why the requirement that candidates file the statement-of-economic-interests form simultaneously with the petition for ballot access is burdensome. They have only baldly asserted that it is. Nor have the plaintiffs asserted that the requirement discriminates against them as independent candidates.

The plaintiffs would have the court assume that, because they did not comply with the simultaneous-filing requirement, it is unduly burdensome. However, the requirement does not appear unduly burdensome. The law imposes no requirement that candidates wait until the day they intend to file their petitions for ballot access to obtain the statement of economic interests. Candidates can obtain and fill out the statement-of-economic-interests form well in advance of the deadline for filing petitions for ballot access, so that they have the form ready to turn in when they submit their petitions. Given this fact, the court does not perceive the simultaneous-filing requirement to impose a burden any greater than the burden posed by the requirement of filing the statement-of-economic-interests form in the first instance, which the plaintiffs do not contend is undue.

Nor does the court find the simultaneous-filing requirement to discriminate against independent candidates. Under § 36-25-15, all candidates, whether independent or affili-ated with a major party, must file a statement of economic interests at the time they file the documents necessary to establish candidacy. Moreover, individual candidates have considerably more time than major party candidates in which to complete their statements of economic interests. Under Alabama Code § 17-16-11, major party candidates must file a declaration of candidacy 60 days before the primary election. Independent candidates, in contrast, need not file their petitions for ballot access until six days after the second primary election under Alabama Code § 17-7-1.[12] Thus independent candidates have considerably more time than major-party candidates in which to fill out their statements of economic interests.

In 1998, for instance, according to the 1998 Candidate Filing Guide published by the Alabama Secretary of State's Office, the deadline for major-party candidates to qualify to run for office was April 3.[13] Thus, such candidates would have had to file their statements of economic interests by April 3. In contrast, the last day independent and third-party candidates could file their petitions for ballot access was July 6, 1998.[14] Therefore, in 1998, independent candidates had approximately three months longer than major-party candidates in which to complete their statements of economic interests.

Under these circumstances, the simultaneous-filing requirement cannot be said to burden the ballot-access rights of independent candidates in a discriminatory manner. The court therefore finds the simultaneous-filing requirement to be a "reasonable, nondiscriminatory restriction" on ballot access rights. *Burdick,* 504 U.S. at 434, 112 S.Ct. at 2063.

Nevertheless, under *Burdick,* the court must assess the State's justifications for the simultaneous-filing requirement and balance them against the burdens imposed by it. The justification for the requirement of simultaneous filing is self-evident. The information provided on the statement-of-economic-interests form gives voters insight into

---

12. The "second primary election" is a primary election that is scheduled in case no candidate obtains a majority vote in the first primary. 1975 Ala.Code § 17-16-36(a). It is held the third Tuesday after the first primary. 1975 Ala. Code § 17-16-36(b).

13. *See* Joint Evidentiary Record, § 2 at 4.

14. *See id.*

**1334**

financial interests that could influence how a candidate, if elected, would perform. That information becomes important as soon as an individual becomes an independent candidate for office, because it is at that point that voters must begin deciding whom they will support as a candidate and for whom they will vote in the election. Admittedly, the defendants have not submitted evidence to support this justification for the simultaneous-filing requirement. However, where, as here, the justification is one based upon common sense, such evidence need not be provided. *Cf. International Caucus of Labor Committees v. City of Montgomery*, 111 F.3d 1548, 1551 (11th Cir.1997) (holding, in context of first-amendment challenge to restriction on speech in a public forum, that government is "entitled to advance its interests by arguments based on appeals to common sense and logic"). Therefore, because the simultaneous-filing requirement is a reasonable, nondiscriminatory restriction on ballot access, the important regulatory interest just described is sufficient to justify the minimal burden imposed by the restriction. *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063. Accordingly, the plaintiffs cannot prevail in their challenge.

### III.

For the reasons discussed above, the court will deny the plaintiffs' request for relief. An appropriate judgment will be entered.