Warren CELLI, Plaintiff,

v.

CITY OF ST. AUGUSTINE,
Florida, Defendant.

No. 3:98–CV–253J21B.

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 31, 2000.

usually containing poems or other written words. Mr. Celli also produces his own newspaper, called *The St. Aug Dog*, which contains political cartoons and opinions. Plaintiff contends that the Defendant City of St. Augustine prevented him from displaying, offering for sale, and selling his art on the public sidewalks and streets of St. Augustine. Plaintiff argues that he was so prevented through the enforcement of Ordinance 82–54 (January 10, 1983), codified as St. Augustine, Florida, Code of Ordinances ch. 22, art. I, § 22–6 (hereinafter referred to as "Section 22–6" or "Ordinance")[1], which provides in pertinent part:

> (a) It shall be unlawful for any person or organization to use or occupy any public square, park, street, sidewalk or other public property within the city for the purpose of selling, displaying, offering for sale or peddling any goods, wares or merchandise, except any non-profit organization, religious, literary, scientific, charitable, educational purpose who shall have obtained a permit from the city manager or his designee.

On March 5, 1998, Plaintiff set up a tripod stand on public property outside of a private park on the corner of Hypolita Street and St. George Street, located within the historic district of St. Augustine. St. George Street allows only pedestrian traffic. Hypolita Street is a street that allows vehicular traffic. Plaintiff's stand contained a petition for a constitutional defense organization. He had buttons for his constitutional defense organization. However, the primary purpose of Plaintiff's stand was to sell his political newspaper, *The St. Aug Dog*. The focus of Plaintiff's organization and newspaper was

D. Gray Thomas, Sheppard, White and Thomas, P.A., Jacksonville, FL, Michael R. Yokan, Law Office of Michael R. Yokan, Jacksonville, FL, for plaintiff.

Susan S. Erdelyi, Marks, Gray, P.A., Jacksonville, FL, for defendant.

## MEMORANDUM ORDER

NIMMONS, District Judge.

Plaintiff Warren Celli challenges an ordinance of the City of St. Augustine, Florida on the basis that it deprives him of his First Amendment right to free speech. After a jury trial and verdict, the Court sets forth below its findings on the reserved issues of law.

## I. Facts

Plaintiff Warren Celli is a self-described "street artist." Mr. Celli creates graphic images, mostly of a political nature and

---

1. Section 22–6 was approved as Ordinance 82–54 (January 10, 1983). It was subsequently codified as St. Augustine, Fla., Code of Ordinances ch. 22, art. I, § 22–6. In proceedings before the Court, the parties have referred to the Ordinance as "Section 22–6" or "Ordinance 22–6."

commentary on the City's enforcement of Section 22–6 against street artists along St. George Street. Other street artists protested Section 22–6 that day and television news cameras were present. Also present were friends of the Plaintiff, some of whom had brought video cameras.

While Plaintiff was selling his newspapers and graphic art, a St. Augustine police officer observed the Plaintiff and approached him. The police officer also called his sergeant to the scene. What transpired between the police officers and the Plaintiff was disputed at trial. Plaintiff claimed that the City, through its police officers enforcing Section 22–6, violated his Constitutional right to free speech by preventing him from selling his art and newspaper. Defendant contended that the police officers were not enforcing Section 22–6. Rather, Defendant asserted, the police officers were concerned for public safety inasmuch as the Plaintiff's stand was situated where a busy pedestrian street crossed a vehicular street.

At the conclusion of a full trial on the factual issues, the jury returned a verdict for the Plaintiff. The facts found by the jury on its interrogatory verdict form (Dkt.67) were: (1) the Defendant, through its police officers, prevented the Plaintiff from displaying and/or selling his newspapers and/or art on March 5, 1998; (2) the enforcement, or threatened enforcement, by the officers of Section 22–6 was a substantial motivating factor for the above referred acts of the officers; and (3) the Defendant's above acts were the proximate cause of damages sustained by Plaintiff. The jury then awarded damages in the amount of $23,500.

## II. Conclusions of Law

Since the jury has now determined that the Defendant was enforcing Section 22–6 against the Plaintiff, the Court must address whether Section 22–6 is unconstitutional. If the Ordinance is unconstitutional then Plaintiff did, indeed, suffer a cognizable injury and the jury's award of damages may stand. However, if the Court finds that the Ordinance is not unconstitutional then Plaintiff will not have suffered any cognizable injury, despite the fact that Section 22–6 was enforced against him. The Plaintiff would have suffered no more from the Ordinance's enforcement than if he had received a speeding ticket; thus the jury's award of damages could not stand.

### A. Protected Speech Materials

 The Court has no hesitation in finding that Plaintiff's materials are protected under the First Amendment. On the day of the incident, Plaintiff was selling a newspaper and visual art. The newspaper is a quintessential example of protected expression. *See Mills v. State of Alabama*, 384 U.S. 214, 219, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966) ("The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars, to play an important role in the discussion of public affairs"). Likewise, the Court finds that the visual art is protected speech in this instance.

There is no Eleventh Circuit precedent to guide the Court on whether artworks are protected expression under the First Amendment. The Second Circuit has held that all visual art is protected under the First Amendment. *See Bery v. City of New York*, 97 F.3d 689, 695–96 (2d Cir. 1996) ("Visual artwork is as much an embodiment of the artist's expression as is a written text, and the two cannot always be readily distinguished"). Nevertheless, the Court need not reach as far as the Second Circuit in resolving the instant case. Plaintiff's visual art contains phrases and

poems, making each artwork a form of political parody or statement. As such, each piece of Plaintiff's visual art clearly incorporates written expression that is protected under the First Amendment. *See International Caucus of Labor Comms. v. City of Montgomery*, 111 F.3d 1548, 1551 (11th Cir.1997) (holding that the "distribution of literature is a type of speech protected by the First Amendment").

■ When analyzing the Ordinance for facial unconstitutionality, the Court also examines whether on its face the Ordinance applies to speech. The Ordinance prohibits the use or occupation of public property "for the purpose of selling, displaying, offering for sale or peddling any goods, wares or merchandise." The Supreme Court has held that the *sale* of protected materials is protected. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n. 5, 108 S.Ct. 2138, 2143 n. 5, 100 L.Ed.2d 771 (1988) ("the degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away"). "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801, 108 S.Ct. 2667, 2680, 101 L.Ed.2d 669 (1988) (finding a North Carolina law regulating professional fundraisers unconstitutional). *See also Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943) (explaining that First Amendment freedom "embraces the right to distribute literature and necessarily protects the

right to receive it"); *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1196 (11th Cir.1991) (finding that the Eleventh Circuit "has joined an increasingly lengthy body of Supreme Court and federal precedent emphasizing that there is 'no doubt' that the right to distribute and circulate newspapers through the use of newsracks is protected by the first amendment").

■ Thus, while Section 22–6 may be geared toward application against vendors of wares, as argued by Defendant, the Ordinance is also capable of application against vendors of protected speech.[2] The fact that the jury found that the Ordinance was enforced, or threatened to be enforced, against the Plaintiff is ample proof of this possibility. Consequently, the Court finds that Section 22–6 is capable of being enforced against protected speech activities and must undergo constitutional scrutiny.

### B. Forum Analysis and the Standard of Review

The Court must now analyze the City of St. Augustine's attempt to restrict Plaintiff's speech through Section 22–6. Plaintiff argues that Section 22–6 is unconstitutional both on its face and as applied to the Plaintiff. The Court will first scrutinize the Ordinance on its face. The Ordinance seeks to ban individuals and organizations from using or occupying "any public square, park, street, sidewalk or other public property within the city." Since these areas are public property, the first step in the analysis is to determine the type of forum in which the speech occurs.

---

2. The Court recognizes that regulations of commercial speech are subject to less exacting scrutiny. *See generally Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Nevertheless, that is not to say that commercial speech deserves no protection at all. The Court notes, without deciding, that a ban on all commercial speech from most individuals or groups, but favoring commercial speech from certain excepted groups, might also be constitutionally infirm.

The Supreme Court has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). A traditional public forum is a place that has been "devoted to assembly and debate" either by "long tradition" or "government fiat." 473 U.S. at 802, 105 S.Ct. at 3449 (quoting *Perry Educ. Assn. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)). Public parks, streets, and sidewalks are all traditional public fora. *See Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449; *International Caucus of Labor Comms.*, 111 F.3d at 1550. Therefore, the City's Ordinance is an attempt to regulate speech in public fora.

In a traditional public forum, content-based restrictions on private speech must survive strict scrutiny to pass constitutional muster. *See Perry*, 460 U.S. at 45–46, 103 S.Ct. at 954. "Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448. Nevertheless, the government may regulate the time, place, and manner of expression "as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Sentinel Communications Co.*, 936 F.2d at 1201–02.

### C. Content Neutral or Content Discriminatory

The Court next determines whether the Ordinance is content neutral.

A reading of the Ordinance shows that it is not. The Ordinance favors content from nonprofit organizations or religious, literary, scientific, charitable, or educational content over all other content. Conspicuously absent from the Ordinance's exclusions is one for political content—the type of speech applicable in the instant case. That is not to say, however, that the Ordinance would be constitutionally valid if an exclusion for political content were included. "The government may not regulate use based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386, 112 S.Ct. 2538, 2545, 120 L.Ed.2d 305 (1992) (invalidating crime ordinance which outlawed only fighting words based on race, color, creed, religion or gender). *See also City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (holding ordinance which banned all residential signs but those falling within one of ten exemptions was unconstitutional content discrimination which treated some kinds of speech more favorably than others).

The *Gilleo* court explained the constitutional reasoning behind the notion that "a regulation of speech may be impermissibly underinclusive." *Gilleo*, 512 U.S. at 51, 114 S.Ct. at 2043. First, excluding all speech except certain categories "may represent a governmental 'attempt to give one side of a debatable public question an advantage in expressing its views to the people.'" *Id.* (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785–786, 98 S.Ct. 1407, 1420–21, 55 L.Ed.2d 707 (1978)). On the other hand, the government may be using the regulation and its exemptions to "select the 'permissible subjects for public debate' and thereby to 'control . . . the search for political truth.'" *Id.* (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm. of N.Y.*, 447

U.S. 530, 538, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)).

By excluding all use or occupation of public property "except any nonprofit organization, religious, literary, scientific, charitable, educational purpose," the Ordinance is impermissibly favoring certain types of content over others. Thus, the Court finds that Section 22-6 is content discriminatory and is subject to strict scrutiny. Defendants must show that Section 22-6 is "necessary to serve a compelling state interest and the [Ordinance] is narrowly drawn to achieve that interest." *Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448.

### D. Application

█ The Court finds that the Ordinance. is not narrowly tailored to serve a compelling government interest. Nonprofit organizations as well as those with "religious, literary, scientific, charitable, [and] educational" purposes are just as capable of causing street congestion and traffic hazards as any of the persons the Ordinance prohibits from using or occupying public space. These groups are also just as likely to cause visual clutter and to compete with local business. In this respect, the Ordinance is under-inclusive in its scope and does not accomplish its goal. Yet, the ordinance also sweeps too broadly by prohibiting speech by a majority of individuals and organizations. Such an ordinance is not narrowly drawn.

The Defendant claims that the Ordinance is content-neutral. As such, the City argues, the Ordinance is a legitimate time, place, and manner restriction. The Court acknowledges that Defendant correctly argues that the City has a substantial interest in maintaining the aesthetic attractiveness of St. Augustine, *See e.g. City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806-07, 104 S.Ct.

2118, 80 L.Ed.2d 772 (1984); promoting public safety and the orderly movement of pedestrians, *See e.g. Cox v. Louisiana*, 379 U.S. 536, 554-55, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); and protecting the local merchant economy, *See e.g. Turner Broad. Sys. Inc. v. F.C.C.*, 512 U.S. 622, 114 S.Ct. 2445, 2469-70, 129 L.Ed.2d 497 (1994).

Despite Defendant's arguments, however, the Court finds that Section 22-6 cannot be a valid time, place, or manner restriction since the Ordinance completely excludes certain classes of people or organizations from all public property. Section 22-6 is not narrowly tailored to serve the significant government interest of controlling pedestrian and vehicular traffic around the historic district of St. Augustine. But most egregious is the fact that the Ordinance completely prohibits speech by a certain class of speaker on any and all public property.

The Defendant argues that speakers, including the Plaintiff, have alternate means for expression. For support, Defendant cites to *International Caucus of Labor Committees. v. City of Montgomery*, 111 F.3d 1548 (11th Cir.1997), for the proposition that Plaintiff was free to set up his tripod on private property, and thus his First Amendment rights were not violated. Defendant, however, misunderstands the import of *International Caucus.* The regulation at issue there only prohibited tables on public sidewalks. The regulation explicitly stated that individuals and groups were free "to hand out literature and solicit contributions on the sidewalks." 111 F.3d at 1552. It was only the tables, which obstructed free pedestrian traffic on the sidewalks, that were prohibited from the public property. *Id.* It was only because the sidewalks remained open to other speech activities that the court in *International Caucus* held that the regulation

left open sufficient alternative channels for communication. *Id.*

In the present case, the Ordinance prohibits a person or group from using or occupying public property. The Ordinance does not specify that tables or other obstructions are prohibited. As the Ordinance is currently written, a person wearing a sandwich board displaying art, goods, or protected speech materials would be prohibited from using or occupying any public property within the city limits of St. Augustine just as much as a person who set up a semi-permanent structure. Such a law is not narrowly tailored to serve a compelling government interest. Nor is it narrowly tailored to serve a significant government interest, leaving open ample alternative channels of communication.

 In view of the foregoing, the Court finds Section 22–6 unconstitutional on its face. The Ordinance is content discriminatory and is not necessary to serve a compelling government interest. Moreover, even if the Court were to find the Ordinance content neutral, the Ordinance is not a legitimate time, place, or manner restriction. The Ordinance is not narrowly tailored to serve a significant government interest, nor does it leave open ample alternative channels of communication. The Court also finds that Section 22–6 is unconstitutional as applied to the Plaintiff. The City's police officers enforced, or threatened to enforce, the Ordinance against the Plaintiff because his materials did not fall into one of the Ordinance's exceptions. As such, the City enforced a content discriminatory ordinance against Plaintiff, impinging Plaintiff's right to free expression.

### III. Damages

 The Court notes that Defendant made much of the fact that Plaintiff's art and newspaper were specifically created in order to protest the enforcement of Section 22–6 against street artists, other than himself, along historic St. George Street. Defendant claimed that the Plaintiff staged the incident between himself and the officers. Defendant also argues that it notified the Plaintiff later that day, or the next, that the Plaintiff was free to sell his materials. Consequently, the Defendant argues that Plaintiff suffered no real damages.

The Court notes that this scenario was presented to the jury, which returned a verdict that the City was enforcing Section 22–6 against the Plaintiff. While the Plaintiff may have hoped for a confrontation with police officers trying to enforce the Ordinance, this does not change the ultimate result. Having now found that the Ordinance is unconstitutional, it can now be said that the Plaintiff did indeed suffer a deprivation of his constitutional rights. While that deprivation may have lasted for only a day, or even just a few hours, the injury is no less real. Defendant's notice to Plaintiff may have served to mitigate damages, but the initial damage was already done.

While it is difficult indeed to put a monetary value on an intangible right as significant as free speech, that is the task the jury was asked to perform—and it did so. The Court finds that the jury's award of damages in the amount of $23,500 is not excessive.

The Plaintiff's prayer for relief also requests attorneys' fees under 42 U.S.C. § 1983. The Court, in its discretion, may allow a prevailing party in an action under § 1983 an award of attorneys' fees. 42 U.S.C. § 1988(b). As hereinafter provided, the parties will be given the opportunity of briefing the issue of whether the Court should award attorneys' fees to the Plaintiff.

Upon consideration of the foregoing, it is hereby **ORDERED**:

1. The Clerk is **DIRECTED** to enter judgment for the Plaintiff in the amount of $23,500, pursuant to the Jury Verdict (Dkt.67), nunc pro tunc to November 10, 1999.

2. By separate order entered this date, the Court has declared Ordinance 82–54 (January 10, 1983), codified as St. Augustine, Fla., Code of Ordinances ch. 22, art. I, § 22–6 unconstitutional on its face and as applied and has enjoined its enforcement.

3. The parties shall brief the issue of whether the Court should award attorneys' fees to the Plaintiff. Plaintiff's brief shall be filed on or before **February 14, 2000**. Defendant's responsive brief shall be filed within ten days of service of Plaintiff's brief. Such briefs shall not exceed seven (7) pages.

### *DECLARATORY JUDGMENT AND PERMANENT INJUNCTION*

Based upon the Court's findings and conclusions set forth in its memorandum Order (Dkt.69) entered this date, it is **ORDERED and ADJUDGED**:

1. City of St. Augustine Ordinance 82–54 (January 10, 1983), codified as St. Augustine, Florida, Code of Ordinances ch. 22, art. I, § 22–6 is hereby **DECLARED** unconstitutional, under the First Amendment, on its face and as applied.

2. The Defendant, City of St. Augustine, Florida is hereby permanently enjoined from enforcing, or threatening to enforce, said Ordinance.